# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
April 20, 2000 Session

## In Re ADOPTION OF M.J.S.

**Direct Appeal from the Chancery Court for Shelby County**
**Nos. A5151-1, A5153-3(1)    Walter L. Evans, Chancellor**

_____

**No. W1999-00197-COA-R3-CV - Filed October 5, 2000**

_____

Cindy G. Snyder and Wolfgang W. Snyder appeal the trial court's final decree of adoption that permitted Appellee Debra Sue Langston to adopt the Snyders' fourteen-month-old grandson, M.J.S. The Snyders' daughter, Christine L. Snyder, previously had delivered physical custody of the child to Langston and had executed a surrender of her parental rights in favor of Langston. Both the Snyders and Langston filed petitions seeking to adopt the child, and the petitions were consolidated in one action. The trial court permitted the Snyders to participate in the adoption proceedings for the purpose of litigating the best interests of the child; however, the trial court refused to allow the Snyders to pursue their own petition for adoption of the child based on the court's ruling that Tennessee's adoption statutes did not give the Snyders standing to adopt the child. Based upon our interpretation of Tennessee's adoption statutes, we conclude that the trial court committed no reversible error in conducting these adoption proceedings, and we affirm the court's final decree of adoption.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court. ALAN E. HIGHERS, J., filed a concurring opinion. HEWITT P. TOMLIN, JR., SP. J., filed a dissenting opinion.

Richard A. Gordon, Memphis, Tennessee, for the appellants, Cindy G. Snyder and Wolfgang W. Snyder.

Diana L. Schmied, Germantown, Tennessee, and Hayden Lait, Memphis, Tennessee, for the appellee, Debra Sue Langston.

Paul G. Summers, Attorney General and Reporter, and Dianne Stamey Dycus, Deputy Attorney General, for the State of Tennessee.

**OPINION**

On May 19, 1998, the Snyders filed a petition seeking to adopt their grandson, M.J.S., who was born in December 1997. The Snyders' petition for adoption alleged that the child and his mother, Christine L. Snyder (Mother), had lived with the Snyders until April 28, 1998. At the time they filed their petition, the Snyders did not have custody of the child, and they were uncertain as to the child's or the Mother's whereabouts. The Snyders recently had obtained information, however, that the Mother had surrendered her parental rights to the child, that the child was residing with Debra Sue Langston at an unknown address, and that Langston had filed a petition to adopt the child. Based on this information, the Snyders' petition named Langston, the Mother, and the child's unknown father as respondents. In the event Langston had filed a petition seeking to adopt the child, the Snyders asked the trial court to deem their petition for adoption as "a petition to intervene therein."

Contrary to the Snyders' belief, Langston had not yet filed a petition seeking to adopt the child. The next day, however, Langston filed a petition for adoption of the child. Langston's petition alleged that she acquired custody of the child from the Mother on May 2, 1998, that the Mother surrendered her parental rights to the child in favor of Langston before a judge of the Juvenile Court of Shelby County on May 8, 1998, and that, since that date, the child had resided continuously in Langston's home.

Initially, the petitions for adoption of the child were assigned to different parts of the Chancery Court of Shelby County. In response to Langston's petition, the Chancellor of Part III of the Chancery Court entered an Order of Reference whereby the Chancellor appointed the Adoption Resource Center as the child's next friend. The Order of Reference directed that agency to

> investigate the condition and antecedents of the child for the purpose of ascertaining whether he is a proper subject for adoption, to make appropriate inquiry to determine whether the proposed adoptive home is a suitable one for the child, and to investigate any other circumstances or conditions which may have a bearing on the adoption and of which the Court should have knowledge.

The Chancellor of Part III subsequently entered an order transferring Langston's adoption petition to Part I of the Chancery Court for consolidation with the Snyders' adoption petition. Thereafter, all proceedings in the consolidated actions took place in Part I of the Chancery Court.

Langston responded to the Snyders' petition for adoption by filing a motion to dismiss the petition. In support of her motion to dismiss, Langston contended that the Snyders had not met the statutory requirements for filing an adoption petition because they had neither physical custody of the child nor the right to receive physical custody of the child pursuant to the applicable provisions of Tennessee's adoption statutes. *See* Tenn. Code Ann. §§ 36-1-111(d)(6), 36-1-115(b), 36-1-116(b)(5) (1996 & Supp. 1998). On the same day that Langston filed her motion to dismiss, the Snyders filed a motion in which they sought various forms of relief, including the return of the

child to their home, access to confidential information pertaining to Langston's adoption of the child, and the right to intervene in Langston's adoption proceedings.

On June 25, 1998, the trial court entered an order denying Langston's motion to dismiss the Snyders' adoption petition. In a separate order, the trial court declined to act on the Snyders' request for the return of the child to their home; however, the trial court ruled that the Snyders' petition for adoption would be deemed a petition to intervene in the pending adoption proceedings brought by Langston, and the court permitted all parties and their attorneys to have access to certain documents pertaining to the pending adoption proceedings. Langston requested permission from the trial court to pursue an interlocutory appeal of these rulings, but the trial court denied Langston's request. *See* Tenn. R. App. P. 9.

In October 1998, Langston filed a motion for summary judgment in which she again asked the trial court to dismiss the Snyders' adoption petition. In support of her motion, Langston reiterated her argument that the Snyders had failed to meet the statutory requirements for filing an adoption petition because the Snyders had neither physical custody of the child nor the right to receive physical custody of the child pursuant to the applicable provisions of Tennessee's adoption statutes. Langston additionally challenged the Snyders' right to intervene in the pending adoption proceedings.

In their memorandum of law and response opposing Langston's motion for summary judgment, the Snyders acknowledged that the Mother had surrendered her parental rights to the child and had delivered physical custody of the child to Langston. Nevertheless, the Snyders insisted that, in order to protect the child's best interests, the trial court was required to conduct a hearing on the merits of both adoption petitions to determine which of the petitioners, the Snyders or Langston, should be permitted to adopt the child.

Despite the Snyders' objection that the child's best interests could be served only by holding a contested hearing on both adoption petitions, the trial court granted Langston's motion for summary judgment and dismissed the Snyders' petition for adoption. In support of its ruling that the Snyders lacked standing to file an "independent adoption petition," the trial court observed that the following facts were undisputed: Langston received physical custody of the child from the Mother on May 2, 1998; the Mother lawfully surrendered the child to Langston in the Juvenile Court of Shelby County on May 8, 1998; Langston had maintained physical custody of the child since May 2, 1998; and the Snyders did not have custody of the child at the time they filed their adoption petition on May 19, 1998. The trial court indicated that it was making no determination on the Snyders' right to intervene in the pending adoption proceedings "at this time," but the court ruled that the Snyders would "be allowed to be heard in the adoption hearing" and that the Snyders' attorney would "be allowed to cross-examine witnesses and present deposition testimony and present evidence as to the best interest and welfare of the child."

After the trial court orally granted Langston's motion for summary judgment, but before the court had entered a written order containing its rulings, the Snyders filed another pleading that they

titled "Intervening Petition for Adoption." The intervening petition alleged, *inter alia*, that the Mother had surrendered her parental rights to the child, that the child was in the physical custody of Langston, and that the Snyders did not presently have custody of the child. As authority for their intervening petition, the Snyders referenced the provisions of section 36-1-116(f)(1) of Tennessee's adoption statutes. *See* Tenn. Code Ann. § 36-1-116(f)(1) (Supp. 1998).

Langston responded to the Snyders' Intervening Petition for Adoption by filing another motion to dismiss. In addition to repeating her argument that the Snyders had failed to meet the statutory requirements for filing an adoption petition, Langston contended that the cited provisions of the adoption statutes did not give the Snyders any right to intervene in the pending adoption proceedings.

In its subsequent order entered on Langston's motion, the trial court stopped short of dismissing the Snyders' intervening petition. Instead, the trial court ruled that the Snyders had "no standing *at this time* to petition for adoption" but that the Snyders would be allowed to intervene in the pending adoption proceedings for the limited purpose of presenting evidence as to Langston's fitness. The trial court's order also disposed of several pretrial motions filed by the Snyders. In one of its rulings, the trial court agreed to consider information that had been filed in the Snyders' adoption proceedings. The trial court indicated that it would consider this information, however, "solely on the issue of guardianship in the event [Langston's] petition [was] denied."

After conducting a hearing on Langston's petition, the trial court entered a final decree granting the adoption to Langston. On appeal from this final decree, the Snyders contend that the trial court erred in (1) granting Langston's motion for summary judgment and dismissing the Snyders' petition for adoption, (2) permitting the Snyders to intervene for the limited purpose of litigating the best interest and welfare of the child, (3) accepting the home study report and approving the recommendation of Anne McGinnis of the Adoption Resource Center, and (4) determining that the proposed adoptive home of Langston was a suitable one for the child. The Snyders also attack Tennessee's adoption statutes on various constitutional grounds, contending that the statutes fail to adequately protect the constitutional rights of the child.

We first address the Snyders' contention that the trial court erred in granting Langston's motion for summary judgment, thereby dismissing the Snyders' petition for adoption and permitting the Snyders to intervene for the limited purpose of litigating the best interest and welfare of the child. In addressing this contention, we are mindful that summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the courts are required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, the trial court, and this court on appeal, "must take the strongest legitimate view of the evidence in favor of the

-4-

nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

We begin our analysis of this issue with a brief overview of what we perceive to be the relevant provisions of Tennessee's adoption statutes. The legislature has stated that the primary purpose of the adoption statutes "is to provide means and procedures for the adoption of children and adults that recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption." Tenn. Code Ann. § 36-1-101(a) (Supp. 1998). Among other rights and interests, the adoption statutes strive to protect "the rights of all persons who are affected by [the adoption] process and who should be entitled to notice of the proceedings for the adoption of a child," the interests of adopted children in achieving permanency "at the earliest possible date," the rights of adopted children to be free "from any interference by any person who may have some legal claim after the child has become properly adjusted to the child's adoptive home," and, similarly, the rights of adoptive parents to be free "from the later disturbance of their parental relationship with their child." Tenn. Code Ann. § 36-1-101(a)(4)–(6), (b)(3) (Supp. 1998). Above all, however, the adoption statutes strive to protect the "best interests" of children who are involved in the adoptive process. Tenn. Code Ann. § 36-1-101(a), (d) (Supp. 1998).

Tennessee's adoption statutes limit the parties who may bring an adoption proceeding in this state by imposing certain requirements on such parties. Some of these requirements include that the petitioner be over eighteen years of age, *see* Tenn. Code Ann. § 36-1-115(a) (1996), that the petitioner be a resident of this state, subject to certain exceptions, *see* Tenn. Code Ann. § 36-1-115(d)–(f) (1996), and that any living spouse of the petitioner join in the petition if the spouse is competent to do so, *see* Tenn. Code Ann. § 36-1-115(c) (1996).

The adoption statutes additionally require that the petitioners have either physical custody of the child or the right to receive custody of the child pursuant to a validly executed surrender. *See* Tenn. Code Ann. § 36-1-115(b) (1996). In accordance with this requirement, the adoption statutes provide that the petition for adoption must state "[t]hat the petitioners have physical custody of the child or that they meet the requirements of § 36-1-111(d)(6) [regarding validity of surrenders], and from what person or agency such custody was or is to be obtained." Tenn. Code Ann. § 36-1-116(b)(5) (Supp. 1998).

In the context of adoptions involving a surrender or parental consent, Tennessee's adoption statutes permit biological parents to surrender their parental rights to a child in favor of a particular person or agency. The statutes define "surrender" as "a document executed under the provisions of § 36-1-111 or under the laws of another state or territory or country, by the parent or guardian of a child, by which that parent or guardian relinquishes all parental or guardianship rights of that parent or guardian to a child, ***to another person or public child welfare agency or licensed child-placing agency*** for the purposes of making that child available for adoption." Tenn. Code Ann. § 36-1-102(45) (Supp. 1998) (emphasis added). The statutes provide that "[a] surrender or parental consent may be made or given ***to any prospective adoptive parent who has attained eighteen (18) years of age, the department, or a licensed child-placing agency*** in accordance with the provisions

of this section." Tenn. Code Ann. § 36-1-111(c) (Supp. 1998) (emphasis added). Thus, the statutes allow a biological parent to surrender a child directly to a prospective adoptive parent chosen by the biological parent. *See id.*; *see also* Tenn. Code Ann. § 36-1-111(l), (m), (q)(1) (Supp. 1998).

Although a biological parent has the right to make the initial choice of his or her child's adoptive parent, the biological parent's right to choose the child's adoptive parent is not absolute. In filing an adoption petition, the prospective adoptive parent must allege, *inter alia*, that the petitioner is a fit person "to have the care and custody of the child and that it is in the best interest of the child for this adoption to occur." Tenn. Code Ann. § 36-1-116(b)(9) (Supp. 1998). In its final order of adoption, the trial court must find "[t]hat the adoption is for the best interest of the child." Tenn. Code Ann. § 36-1-120(a)(13) (1996). Thus, the biological parent's choice of an adoptive parent is always subject to the trial court's determination that the proposed adoption is in the child's best interests.

The adoption statutes contemplate different types of intervention by interested parties. Tennessee's paternity statutes permit the putative father of a child for whom an adoption petition has been filed to file a complaint to establish parentage or to intervene in the adoption proceedings by filing a complaint in the court in which the adoption petition is pending. If the putative father chooses this course of action, he may pursue his complaint to establish his parentage of the child, or he may intervene for the purpose of presenting a defense to the adoption petition. *See* Tenn. Code Ann. §§ 36-2-307(c), 36-2-318(j) (Supp. 1998). In such cases, the court hearing the adoption petition has exclusive jurisdiction to determine the issue of parentage. *See* Tenn. Code Ann. § 36-2-307(c)(3) (Supp. 1998).

Moreover, in cases involving a child who is the subject of a surrender, parental consent, or guardianship order, Tennessee's adoption statutes authorize "any person" who is interested in the child's welfare to intervene in a surrender or adoption proceeding for the purpose of presenting evidence regarding the best interests of the child. *See* Tenn. Code Ann. § 36-1-111(u)(2) (Supp. 1998). Specifically, the statutes authorize the Department of Children's Services (DCS), a licensed child-placing agency, a licensed clinical social worker, or "any person" to intervene in the proceeding by filing a sworn complaint that "seeks to present proof concerning the best interests of the child." *Id.*; *cf.* Tenn. Code Ann. § 36-1-116(k)(1) (Supp. 1998) (authorizing DCS or licensed agency or social worker to intervene in any adoption proceeding for purpose of litigating child's best interests). The party seeking to intervene may file the complaint "in the court where the surrender was executed or filed or where the adoption petition containing a parental consent was filed." Tenn. Code Ann. § 36-1-111(u)(3) (Supp. 1998). After conducting a final hearing on the complaint, if the trial court finds by clear and convincing evidence that such action is in the best interests of the child, the trial court may "enter an order removing the child from the prospective adoptive parents or other custodian or guardian of the child." Tenn. Code Ann. § 36-1-111(v)(4) (Supp. 1998). In that event, the trial court "may award temporary legal custody giving any person, [DCS] or [a] licensed child-placing agency, or a child-caring agency, the care and custody of the child." *Id.*; *cf.* Tenn. Code Ann. § 36-1-116(k)(7) (Supp. 1998) (authorizing trial court to remove child from custody of prospective

adoptive parents, dismiss adoption petition, and make alternate disposition if court finds by clear and convincing evidence that such action is in child's best interests).

The adoption statutes contemplate another type of intervention where a third party files a petition seeking to adopt the same child that is subject to a pending adoption petition. With one notable exception, a third party who files an intervening petition seeking to adopt a child must meet all of the statutory requirements for filing an adoption petition. That is, the person must be over eighteen years of age, the person's spouse must join in the petition (if the person has a living spouse who is competent to do so), and the person must be a resident of this state (unless the person is related to the child or is in military service stationed out of this state). *See* Tenn. Code Ann. § 36-1-115(a), (c), (d), (e), (f) (1996).

In order to file an intervening petition for adoption, however, the petitioner need not have physical custody of the child or the right to receive custody of the child because the adoption statutes specifically except such intervenors from the statutes' custody requirement. Specifically, the pertinent provision of the adoption statutes states that

> [t]he petitioners must have physical custody or must demonstrate to the court that they have the right to receive custody of the child sought to be adopted as provided in § 36-1-111(d)(6) at the time the petition is filed, *unless they are filing an intervening petition seeking to adopt the child*.

Tenn. Code Ann. § 36-1-115(b) (1996) (emphasis added).

Although persons who file an intervening petition seeking to adopt a child need not have physical custody or the right to receive custody of the child at the time they file their petition, other provisions of the adoption statutes indicate that, in order to prevail on their petition to adopt the child, the intervening petitioners must meet the statutes' custody requirement at some point in the adoption proceedings. The adoption statutes provide that a petition for adoption must state "[t]hat the petitioners have physical custody of the child or that they meet the requirements of § 36-1-111(d)(6) [regarding validity of surrenders], and from what person or agency such custody was or is to be obtained." Tenn. Code Ann. § 36-1-116(b)(5) (Supp. 1998). Although section 36-1-115(b) of the adoption statutes excepts intervening petitioners from this custody requirement, section 36-1-116(b)(5) does not. *Compare* Tenn. Code Ann. § 36-1-115(b) (1996), *with* Tenn. Code Ann. § 36-1-116(b)(5) (Supp. 1998).

Another provision of the adoption statutes provides courts with guidance when they are faced with both an original adoption petition and an intervening adoption petition. When an adoption petition is filed, the trial court in which the petition is filed has "exclusive jurisdiction of all matters pertaining to the child, including the establishment of paternity of a child pursuant to chapter 2,

part 1 of this title,[1] except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37." Tenn. Code Ann. § 36-1-116(f)(1) (Supp. 1998) (footnote added). This grant of jurisdiction, however, includes the following caveat:

> [P]rovided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption or unless the petitioners otherwise meet the requirements of § 36-1-111(d)(6).

Tenn. Code Ann. § 36-1-116(f)(1) (Supp. 1998).

Although the foregoing statute is not a model of clarity, we interpret this statute to mean that, in cases where an intervening adoption petition has been filed, neither the original petitioners nor the intervening petitioners will be granted an adoption of the child unless the trial court finds that the petitioners have either physical custody of the child or the right to receive custody of the child pursuant to a validly executed surrender. *See id*. This interpretation is bolstered by other provisions of the adoption statutes, which require the trial court to include in its final order of adoption, among other findings, "[t]he date when the petitioners acquired physical custody of the child and from what person or agency or by which court order." Tenn. Code Ann. § 36-1-120(a)(4) (1996).

Applying the foregoing principles to the present adoption proceedings, we first conclude that the Snyders met the statutory requirements for filing an intervening petition for adoption. The adoption statutes specifically permitted the Snyders to file an intervening petition seeking to adopt the child even if the Snyders did not have physical custody of the child or the right to receive custody of the child at the time they filed their petition. *See* Tenn. Code Ann. § 36-1-115(b) (1996). Inasmuch as the Snyders' petition constituted "an intervening petition seeking to adopt the child," the petition did not have to allege that the Snyders had physical custody of the child or the right to receive custody of the child pursuant to a valid surrender. *Id*.

Nevertheless, we decline to reverse the trial court's final decree of adoption based upon the court's refusal to permit the Snyders to proceed with their intervening adoption petition.[2] Although

---

[1] Chapter 2, part 1 of title 36 was repealed in 1997. *See* 1997 Tenn. Pub. Acts. 477, § 1 (repealing Tenn. Code Ann. §§ 36-2-101 to -115 (1996)). Tennessee's new paternity statutes appear in chapter 2, part 3 of title 36. *See* Tenn. Code Ann. §§ 36-2-301 to -322 (Supp. 1998).

[2] Contrary to the Snyders' description of the trial court's action, we are not convinced that the trial court dismissed the Snyders' intervening petition for adoption. In its order on Langston's motion for summary judgment, the

(continued...)

the Snyders were not required to comply with the statutory custody requirement before filing an intervening petition for adoption, under the pertinent provisions of the adoption statutes, the trial court was not authorized to grant the Snyders an adoption unless the court found that the Snyders had physical custody or the right to receive custody of the child at some point during the adoption proceedings. *See* Tenn. Code Ann. §§ 36-1-116(f)(1), 36-1-120(a)(4) (1996 & Supp. 1998). At no time during these adoption proceedings did the Snyders have either physical custody of the child or the right to receive custody of the child pursuant to a validly executed surrender. To the contrary, it was undisputed that, at all times pertinent to these adoption proceedings, Langston was the only petitioner who had physical custody of the child or the right to receive custody of the child pursuant to a valid surrender executed by the Mother. In light of the undisputed fact that the Snyders never met the adoption statutes' custody requirement, we conclude that the trial court did not err in refusing to allow the Snyders to pursue their intervening petition for adoption.[3]

On appeal, the Snyders contend that the trial court erred in granting Langston's motion for summary judgment on this issue because Langston's motion failed to comply with the technical requirements of rule 56.03 of the Tennessee Rules of Civil Procedure. Rule 56.03 requires the party moving for summary judgment to provide "a separate concise statement of the material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. The rule directs the movant to set forth each fact in a separate, numbered paragraph and to support each fact with a specific citation to the record. *See id*. These requirements were added in 1997 to assist the court and litigants in determining whether the record contains a genuine issue as to any material fact. *See* Tenn. R. Civ. P. 56.03 advisory commission comment.

In the present case, Langston supported her motion for summary judgment with a memorandum of law that contained a concise statement of material facts; however, Langston failed to separately number the facts or to support each fact with a specific record citation. Nevertheless, we decline to reverse the trial court's summary judgment based upon Langston's failure to comply with rule 56.03's technical requirements. When the trial court granted Langston's motion for summary judgment, the only material fact at issue was whether the Snyders had physical custody or the right to receive custody of the child pursuant to Tennessee's adoption statutes. At the summary judgment hearing, the Snyders' counsel conceded that the Snyders had not met the adoption statutes'

---

[2](...continued)

trial court clearly dismissed the first petition for adoption filed by the Snyders. The trial court did not express itself as clearly, however, when it entered its subsequent order on Langston's motion to dismiss the intervening petition for adoption filed by the Snyders. Rather than dismissing the intervening petition, the trial court's order merely ruled that the Snyders lacked standing to pursue their petition "at this time." Regardless of how the trial court's action is characterized, we agree that the court's ruling on this issue effectively prevented the Snyders from pursuing their petition to adopt the child.

[3]We reject the Snyders' contention that they had physical custody of the child until April 28, 1998, by virtue of the fact that the Mother and the child resided in the Snyders' home until that date. Even if the child's residence in the Snyders' home could be characterized as physical custody by the Snyders, we note that this custody arrangement did not exist on May 19, 1998, when the Snyders filed their petition for adoption, or at any other time during these adoption proceedings.

custody requirement. Under these circumstances, we conclude that the Snyders were not prejudiced by any technical deficiencies in Langston's summary judgment motion. *See Selvy v. Vinsant*, No. 03A01-9903-CV-00081, 1999 WL 894435, at \*1 (Tenn. Ct. App. Oct. 13, 1999) (*no perm. app. filed*). Moreover, we note that the Snyders' own memorandum of law and response opposing Langston's motion contained many factual assertions that were not supported by citations to the record.

In contending that the trial court erred in granting Langston's motion for summary judgment, the Snyders insist that the trial court should have conducted a full and fair hearing to determine the merits of the competing petitions for adoption filed in this case. The Snyders' argument suggests that the trial court should have given equal consideration to Langston's adoption petition and the Snyders' intervening adoption petition despite the Snyders' failure to meet the adoption statutes' custody requirement.

We conclude that this argument is without merit. As we previously indicated, the adoption statutes did not authorize the trial court to grant the Snyders' adoption petition because it was undisputed that the Snyders had neither physical custody of the child nor the right to receive custody pursuant to the relevant provisions of the adoption statutes. In our view, this limitation on the trial court's authority to grant an adoption was consistent with other provisions of the adoption statutes that permitted the Mother, as the child's biological parent, to choose the child's prospective adoptive parent subject to the trial court's determination that such adoption was in the child's best interests.

In the present case, it was undisputed that the Mother physically delivered the child to Langston and that, shortly thereafter, the Mother executed a surrender designating Langston as the child's prospective adoptive parent. Under our current adoption statutes, the Mother had the right to choose Langston as the child's adoptive parent subject to the trial court's determination that the proposed adoption was in the child's best interests. *See* Tenn. Code Ann. §§ 36-1-102(45), 36-1-111(c), 36-1-116(b)(9), 36-1-120(a)(13) (1996 & Supp. 1998). Inasmuch as the Snyders had neither physical custody of the child nor the right to receive custody, and inasmuch as the Mother delivered the child to Langston and thereafter executed a surrender in Langston's favor, we reject the Snyders' contention that their adoption petition was entitled to the same consideration as the petition filed by Langston.[4]

In holding that the Mother had the right to choose the child's adoptive parent, subject to the trial court's later determination that the proposed adoption was in the child's best interests, we also reject any suggestion that, inasmuch as the Mother surrendered all parental rights to the child, she had no right to choose the child's prospective adoptive parent. The adoption statutes specifically permit a biological parent to choose a child's prospective adoptive parent while at the same time

---

[4]We also reject the Snyders' contention that the trial court should have conducted a full and fair hearing to explore the issues of duress and undue influence relative to the Mother's execution of the surrender in favor of Langston. The Mother has not attempted to revoke the surrender, and the Snyders' intervening petition for adoption contains no allegations of any deficiencies in the Mother's execution of the surrender.

surrendering all parental rights to the child in favor of the adoptive parent. *See* Tenn. Code Ann. §§ 36-1-102(45), 36-1-111(c) (Supp. 1998). To this end, the adoption statutes draw a distinction between a voluntary surrender of parental rights, such as occurred here, and an involuntary termination of parental rights. In the case of a voluntary surrender, the adoption statutes permit the biological parent to choose the child's prospective adoptive parent; however, the statutes confer no such right on a biological parent whose rights are involuntarily terminated. *Compare* Tenn. Code Ann. § 36-1-111 (Supp. 1998), *with* Tenn. Code Ann. § 36-1-113 (Supp. 1998).

In our view, the adoption statutes' provisions authorized the procedure employed by the trial court in this case. When faced with competing adoption petitions, the trial court properly allowed Langston to proceed with her petition, inasmuch as only her petition met the statutory custody requirement. *See* Tenn. Code Ann. § 36-1-116(f)(1) (Supp. 1998). As authorized by the cited statutory provisions, the trial court also allowed the Snyders to proceed with their petition to the extent that it sought to litigate the issue of the best interests of the child. *See* Tenn. Code Ann. § 36-1-111(u)(2) (Supp. 1998). Under the applicable statute, the Snyders had the burden of proving by clear and convincing evidence that the proposed adoption was not in the child's best interests. *See* Tenn. Code Ann. § 36-1-111(v)(4) (Supp. 1998). If the Snyders had succeeded in meeting this burden, the Snyders then could have asked the court for custody of the child and pursued their petition for adoption. *See id*.

We believe that this interpretation is consistent with the entire statutory scheme, which attempts to strike a balance between several potentially conflicting interests, including the biological parent's right to choose a prospective adoptive parent, the petitioner's right to custody of the child pending the adoption proceedings, any third party's interest in the child's welfare, and the trial court's duty to protect the child's best interests. In light of this statutory scheme, we conclude that the trial court did not err in allowing Langston to proceed with her petition for adoption while refusing to permit the Snyders to pursue their intervening adoption petition.

We also affirm the trial court's final decree of adoption wherein the court found that Langston's proposed adoption was in the child's best interests. As required by Tennessee's adoption statutes, the trial court found in its final decree of adoption that Langston was a fit person to have the care and custody of the child, that Langston was financially able to provide for the child, that the child was suitable for adoption, that the adoption was in the best interests of the child, and that Langston had met all of the statutory requirements for adopting the child. *See* Tenn. Code Ann. § 36-1-120(a)(10)–(13), (d) (1996).

Our review of the trial court's final decree of adoption is governed by rule 13(d) of the Tennessee Rules of Appellate Procedure. *See Sonet v. Unknown Father of J.D.H.*, 797 S.W.2d 1, 5 (Tenn. Ct. App. 1990). Rule 13(d) requires this court, in conducting a *de novo* review of the record, to presume that the trial court's factual findings are correct, unless the evidence in the record preponderates otherwise. *See* Tenn. R. App. P. 13(d). In applying this standard of review, we are mindful that "the findings of the trial court as to the credibility of the witnesses are entitled to great weight." *Sonet*, 797 S.W.2d at 5.

Applying the foregoing standard of review, we conclude that the evidence does not preponderate against the trial court's finding that Langston's proposed adoption of the child was in the child's best interests. This evidence showed that, when the final adoption hearing was held in February 1999, the child had been in Langston's custody for over eight of the fourteen months of the child's life. The child had developed a strong emotional bond with Langston, and he called Langston "Mama." Langston was forty years of age, had a college degree in mathematics, and had worked for the same employer for over twenty years. She earned in excess of $70,000 per year and was financially able to provide for the child. While Langston was at work, a nanny took care of the child. According to Langston, the nanny and the child got along well, and they loved each other. Langston had completed the state's training courses for adoptive parents, and Anne McGinnis, the licensed clinical social worker who performed the home study on Langston's home, gave Langston a favorable recommendation.

In contending that the trial court erred in finding that Langston's adoption was in the child's best interests, the Snyders focus primarily on two factors: (1) the nontraditional structure of Langston's home, and (2) Langston's credibility problems as evidenced by her failure to divulge certain information during a July 1998 deposition. Regarding the first factor, the evidence showed that Langston had resided with the same woman for over seven years. At the time of trial, the two women lived together in a house that they owned jointly. Langston testified that she and her roommate were "close committed friends" and that they intended "to live together forever." Langston and her roommate acknowledged that they had a prior sexual relationship, but the roommate testified that, since the child came into the home, this sexual relationship had ceased and they were "evaluating that relationship." As the result of artificial insemination, Langston's roommate gave birth to a son in December 1998. Langston, her roommate, the roommate's infant son, and the child all lived together in a four-bedroom, two-bathroom house where each had his or her own bedroom.

As for the issue of Langston's credibility, the evidence showed that, when Langston was asked during a July 1998 deposition where she lived, she testified that she lived in a house on Tunbridge Place and that the house was titled in her name. Langston did not divulge, however, that she had sold the house just days prior to her deposition and that she soon would be moving to a new home that she had purchased jointly with her roommate. During the July 1998 deposition, Langston also did not fully disclose the nature of her relationship with her roommate, and she did not divulge that she was considering hiring a new nanny for the child.

Despite these arguably negative factors, we decline to second-guess the trial court's finding that Langston's proposed adoption was in the child's best interests. Many of the asserted credibility problems with Langston's testimony stemmed, not from Langston's affirmative misrepresentations, but from her failure to voluntarily disclose certain information. Although the Snyders' counsel attempted to impeach Langston by referencing her July 1998 deposition testimony, Langston explained, apparently to the trial court's satisfaction, that she accurately identified her place of residence, the identity of her roommate, and the identity of the child's nanny when she was asked these questions during the deposition. Significantly, the record contains no evidence that Langston

attempted to conceal these details from Anne McGinnis, the licensed clinical social worker who performed the home study. To the contrary, McGinnis testified that she was fully aware of Langston's living arrangements and the nature of Langston's relationship with her longtime roommate.

As for the nontraditional structure of Langston's home, the Snyders' counsel was permitted to fully explore the details of Langston's living arrangements in his cross-examination of Langston, Langston's roommate, and Anne McGinnis.[5] The trial court specifically considered this evidence, but ultimately the court found that the proposed adoption was in the child's best interests. We agree that, just as a parent's lifestyle is a factor for the trial court to consider in making a custody decision, *see In re Parsons*, 914 S.W.2d 889, 894 (Tenn. Ct. App. 1995), the lifestyle of a proposed adoptive parent is certainly a factor that the trial court should consider in determining whether a proposed adoption is in a child's best interests, *see Hale v. Brewer*, No. 03A01-9301-CV-00054, 1993 WL 328061, at *2 (Tenn. Ct. App. Aug. 18, 1993) (*no perm. app. filed*). By itself, however, this factor does not control the outcome of custody or adoption decisions, particularly absent evidence of its effects on the child. *See Parsons*, 914 S.W.2d at 894.

After reviewing the entire record in this case, and particularly the evidence presented at the final adoption hearing, we decline to disturb the trial court's finding that Langston's proposed adoption was in the child's best interests. Although the Snyders questioned Langston's living arrangements and her ability to raise a male child in that environment, the record contains little evidence as to what, if any, effects this factor might have on the child. The evidence showed that Langston and her roommate maintained separate bedrooms and had ceased their sexual relationship since the child came into the home. They did not rule out the possibility of resuming their sexual relationship at some future date, but their present focus was on parenting their respective children. Langston acknowledged the child's need for interaction with adult males, and she expressed her commitment to providing opportunities for such interaction. Anne McGinnis opined that such interaction was a concern any time a single parent undertook to raise a child, regardless of the parent's sexual orientation.

The Snyders also contend that the trial court erred in accepting the home study report prepared by Anne McGinnis and in approving her recommendation that Langston was fit to adopt the child. The Snyders contend that McGinnis's home study report failed to comply with the order of reference appointing her because McGinnis failed to investigate and report all of the circumstances and conditions which had a bearing on the adoption and of which the trial court should have been apprised. In particular, the Snyders criticize McGinnis's report because it failed to divulge the full extent and nature of Langston's relationship with her roommate. The Snyders also criticize McGinnis's report and recommendation because, in terms of parental fitness, McGinnis

[5]During the adoption hearing, the trial court indicated that it also would allow the Snyders "to take the stand and testify as to why they [felt] it [was] not in the best interest of this child to be placed with Ms. Langston;" however, the Snyders did not take advantage of this opportunity. We also note that the Snyders failed to present any other evidence to this effect, either by lay or expert testimony.

rated Langston a "ten" on a scale of one to ten, and McGinnis testified that her assessment of Langston's fitness to adopt the child was not affected by the sexual nature of Langston's relationship with her roommate.

Contrary to the Snyders' contention, we conclude that the trial court was not required to reject Anne McGinnis's home study report and adoption recommendation. The Snyders' objections on appeal relate, not to the admissibility of McGinnis's report and recommendation, but to the weight that should have been given this evidence. *See Cates v. Better-Bilt Aluminum Prods. Co.*, 607 S.W.2d 476, 478 (Tenn. 1980); *Estate of Jessee v. White*, 633 S.W.2d 767, 769 (Tenn. Ct. App. 1982); *see also Plunk v. Illinois Cent. R.R.*, No. 02A01-9707-CV-00167, 1998 WL 227772, at *17 (Tenn. Ct. App. May 8, 1998), *perm. app. denied* (Tenn. Oct. 19, 1998) (indicating that weaknesses in expert's opinion bear on weight of evidence rather than its admissibility). On cross-examination, the Snyders' counsel had ample opportunity to impeach McGinnis regarding the contents of her report and the bases for her recommendation. *See Plunk*, 1998 WL 227772, at *17; *Boye v. Moore*, No. 03A01-9812-CV-00424, 1999 WL 1068699, at *8 (Tenn. Ct. App. Nov. 24, 1999) (*no perm. app. filed*). As the trier of fact, the trial court was in the best position to adjudge the credibility of McGinnis's testimony and to determine the weight to give her report and recommendation. *See Williams v. Steward*, No. 02A01-9712-CV-00311, 1998 WL 408795, at *2 (Tenn. Ct. App. July 22, 1998) (*no perm. app. filed*); *York v. York*, No. 01A01-9104-CV-00131, 1992 WL 181710, at *4 (Tenn. Ct. App. July 31, 1992) (*no perm. app. filed*).

As previously stated, our review of this matter is *de novo* upon the record of the trial court, accompanied by a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Rule 13(d) Tenn. Rule App. P. This court is limited to the facts in the record before us. We are unable to find any evidence in this record that the rearing of this child by Ms. Langston will have an adverse effect on the child. We do not feel that this court can take judicial notice of this.

We further conclude that the Snyders' constitutional attacks on the adoption statutes do not provide a basis for reversing the final decree of adoption. The Snyders first complain that the adoption statutes are unconstitutional because they fail to provide a child's biological relatives with notice of the child's impending adoption. In fact, the adoption statutes contain a specific provision dispensing with such notice. The challenged provision states that

> [o]ther biological or legal relatives of the child or the adult are not necessary parties to the proceeding and shall not be entitled to notice of the adoption proceedings unless they are legal guardians as defined in § 36-1-102 or legal custodians of the person of the child or adult at the time the petition is filed.

Tenn. Code Ann. § 36-1-117(d)(1) (Supp. 1998). The Snyders also complain that the adoption statutes are unconstitutional because they fail to contain a provision requiring the appointment of a guardian *ad litem* to represent the child's best interests in an adoption proceeding.

The law is well-established that "[a] person has no standing to contest the constitutionality of a statutory provision unless the provision he claims to be deficient has been used to deprive him of his rights." *State v. Johnson*, 762 S.W.2d 110, 118 (Tenn. 1988), *cert. denied*, 489 U.S. 1091 (1989); *State v. Vanzant*, 659 S.W.2d 816, 819 (Tenn. Crim. App. 1983); *accord State v. Perry*, 13 S.W.3d 724, 741 (Tenn. Crim. App. 1999); *State v. Purkey*, 689 S.W.2d 196, 201 (Tenn. Crim. App. 1984). In accordance with this principle, the courts of this state "have refused to permit an individual to question the constitutionality of a statute in the absence of a showing that he or she has been adversely affected by it." *In re Adoption of Taylor*, 678 S.W.2d 69, 73 (Tenn. Ct. App. 1984).

In *In re Adoption of Taylor*, for example, we held that an adoptive child's grandparents lacked standing to challenge the constitutionality of Tennessee's adoption statutes because the grandparents failed to demonstrate that their rights or interests had been adversely affected by the challenged provisions. *Taylor*, 678 S.W.2d at 73. In *Scott v. Pulley*, 705 S.W.2d 666, 670-71 (Tenn. Ct. App. 1985), we held that an adoptive child's biological mother lacked standing to challenge the constitutionality of a provision that established a ninety-day period for revoking surrenders. Inasmuch as the biological mother waited almost eleven months to attempt to revoke her surrender, we reasoned that she had not been adversely affected by the statute's ninety-day limitation period. *See Scott*, 705 S.W.2d at 671.

We conclude that the Snyders lacked standing to raise the foregoing constitutional challenges. The Snyders had notice of the child's adoption proceedings, and they were permitted to participate in the proceedings for the purpose of litigating the child's best interests. Under these circumstances, the Snyders cannot claim that either they or the child were adversely affected by the challenged provision dispensing with notice to the child's biological relatives.

We similarly reject the Snyders' contention that the adoption statutes are constitutionally infirm because they fail to contain a provision requiring the appointment of a guardian *ad litem* in adoption proceedings. Although the adoption statutes do not contain such a requirement, the statutes also do not prohibit the appointment of a guardian *ad litem* in adoption proceedings. Inasmuch as the Snyders did not ask the trial court to appoint a guardian *ad litem* for the child, and inasmuch as the Snyders were permitted to intervene in the adoption proceedings for the purpose of litigating the child's best interests, we fail to see how they or the child were prejudiced by the absence of such a statutory requirement.

The Snyders additionally challenge the adoption statutes on equal protection grounds, contending that the statutes violate equal protection principles because they fail to contain provisions requiring the trial court to consider placing a child with relatives before placing the child with non-relatives. In support of this argument, the Snyders cite Tennessee's guardianship statutes, which direct the trial court, in appointing a guardian for a child, to consider the following persons in the order listed:

(1)    The parent or parents of the minor;

-15-

(2)     The person or persons designated by the parent or parents in a will or other written document;

(3)     Adult siblings of the minor;

(4)     Closest relative(s) of the minor; and

(5)     Other person(s).

Tenn. Code Ann. § 34-12-103 (1996). The Snyders also cite this state's foster care statutes, which require that, for each child in foster care, a plan be prepared that includes one of the following goals:

(A)     Return of the child to parent;

(B)     Placement of the child with relatives of the child;

(C)     Adoption, . . . ;

(D)     Permanent foster care; and

(E)     Emancipation by marriage, court order or reaching the age of majority.

Tenn. Code Ann. § 37-2-403(a)(1) (Supp. 1998).

Both the United States Constitution and the Tennessee Constitution contain provisions guaranteeing to citizens the equal protection of the laws. *See Brown v. Campbell County Bd. of Educ.*, 915 S.W.2d 407, 412 (Tenn. 1995) (citing U.S. Const. amend. XIV; Tenn. Const. art. I, § 8, art. XI, § 8), *cert. denied*, 517 U.S. 1222 (1996). These constitutional provisions "confer essentially the same protection upon the individuals subject to those provisions" by guaranteeing that "all persons similarly circumstanced shall be treated alike." *Tennessee Small Sch. Sys. v. McWherter*, 851 S.W.2d 139, 152-53 (Tenn. 1993) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415 (1920)).

Because of the similarities between the federal and state equal protection provisions,

[w]hen interpreting Article XI, Section 8 [of the Tennessee Constitution], the courts of this state utilize the same framework developed by the United States Supreme Court for analyzing equal protection claims brought under the [Fourteenth] Amendment to the federal constitution. . . . Under this framework, a legislative classification is subject to strict scrutiny when it interferes with a fundamental right or operates to the [disadvantage] of a suspect class of persons. . . . If, however, a legislative classification does not interfere with a fundamental right or adversely affect a suspect class of persons, then the classification is subject to [rational] basis

-16-

scrutiny. . . . Under rational basis scrutiny, a legislative classification will be upheld if a reasonable basis can be found for the classification or if any set of facts may reasonably be conceived to justify it.

*Caudill v. Foley*, No. 01A01-9903-CH-00187, 1999 WL 976597, at \*6 (Tenn. Ct. App. Oct. 28, 1999), *perm. app. denied* (Tenn. Apr. 17, 2000) (citations omitted).

In the present case, the Snyders contend that this state's laws treat children who are the subject of adoption proceedings differently than children who are the subject of guardianship or foster care proceedings.[6] Inasmuch as the challenged classification does not disturb a fundamental right or adversely affect a suspect class of persons, we must uphold the classification if any reasonable basis for it exists. *See Caudill*, 1999 WL 976597, at \*6. In this regard, the adoption statutes themselves provide a reasonable basis for the legislature's disparate treatment of children involved in adoption proceedings. As we previously discussed, the adoption statutes recognize the right of a child's biological parent to choose the child's adoptive parent, subject to the trial court's determination that the proposed adoption is in the child's best interests.[7] *See* Tenn. Code Ann. §§ 36-1-102(45), 36-1-111(c), 36-1-116(b)(9), 36-1-120(a)(13) (1996 & Supp. 1998). In cases where a trial court is presented with a valid surrender or parental consent, requiring the court first to consider placing the child with biological relatives would be illogical because it would conflict with the biological parent's right to make the initial choice of an adoptive parent. Moreover, we observe that, even in the context of the guardianship statutes cited by the Snyders, if no parent is available, the court is required to consider first the guardian designated by the absent parent. *See* Tenn. Code Ann. § 34-12-103 (1996). In short, we do not believe that the cited statutory provisions afford different treatment to similarly situated persons.

Finally, the Snyders mount a general constitutional attack on Tennessee's adoption statutes. Although some of the Snyders' arguments are not clearly articulated, their primary contention appears to be that the adoption statutes do not achieve their goal of protecting the child's best interests because they permit the biological parent to choose the child's prospective adoptive parent to the exclusion of the child's other biological relatives. As pointed out by the Snyders, in enacting the adoption statutes, the legislature indicated that the child's best interests were entitled to constitutional protection and that any conflict between the child's interests and those of an adult

---

[6]For purposes of this appeal, we will presume that the Snyders had standing to assert the child's constitutional rights in these adoption proceedings; however, we note that, as a general rule, a litigant does not have standing to assert another person's legal rights. *See Allen v. Wright*, 468 U.S. 737, 751 (1984); *State v. Sams*, 802 S.W.2d 635, 637 n.3 (Tenn. Crim. App. 1990); *Bentley v. State*, 552 S.W.2d 778, 780 (Tenn. Crim. App. 1977); *see also McCann v. Weathers*, No. 02A01-9704-CH-00092, 1997 WL 607491, at \*4 (Tenn. Ct. App. Oct. 1, 1997) (*no perm. app. filed*); *Tennessee Med. Ass'n v. Corker*, No. 01A01-9410-CH-00494, 1995 WL 228681, at \*3 (Tenn. Ct. App. Apr. 19, 1995) (*no perm. app. filed*).

[7]Some courts have suggested that this right has constitutional implications because it is related to the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *See In re T.J.*, 666 A.2d 1, 11-13 (D.C. 1995), *cert. denied*, 518 U.S. 1028 (1996); *Freeman v. Chaplic*, 446 N.E.2d 1369, 1374-76 (Mass. 1983).

should "always be resolved to favor the rights and the best interests of the child." *See* Tenn. Code Ann. § 36-1-101(d) (1996).

We conclude that this argument is without merit. When faced with such a constitutional assault on a statute, this court must indulge every presumption and resolve every doubt in favor of the constitutionality of the legislative enactment. *See Riggs v. Burson*, 941 S.W.2d 44, 51 (Tenn.), *cert. denied*, 522 U.S. 982 (1997); *Vogel v. Wells Fargo Guard Servs.*, 937 S.W.2d 856, 858 (Tenn. 1996). The party challenging the constitutionality of a statute "bears a heavy burden of overcoming that presumption." *Helms v. Tennessee Dep't of Safety*, 987 S.W.2d 545, 550 (Tenn. 1999).

In our view, the Snyders have failed to meet their burden of demonstrating that Tennessee's adoption statutes are unconstitutional. Although the Snyders ably argue that, in some circumstances, the adoption statutes do not serve the best interests of adoptive children, we believe that many of their arguments do not raise constitutional issues but, rather, are complaints that would be more appropriately addressed to the legislature responsible for enacting and revising the statutes. Moreover, although the Snyders criticize the adoption statutes for permitting a biological parent to designate his or her child's prospective adoptive parent, we reiterate that this choice is always subject to the trial court's ultimate determination that the proposed adoption is in the child's best interests. The Snyders remain firm in their conviction that their grandson's best interests were not served in these adoption proceedings; however, such a result does not mean that the adoption statutes themselves are constitutionally defective.

The trial court's final decree of adoption is affirmed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellants, Cindy G. Snyder and Wolfgang W. Snyder, and their surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE