IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 20, 2015 Session

## IN RE: SONYA M.

**Appeal from the Chancery Court for Dickson County**
**No. 2014CV208     Robert E. Burch, Judge**

_____

**No. M2015-00064-COA-R3-PT – Filed July 16, 2015**

_____

The issue in this case is whether former foster parents have standing to bring an action for termination of parental rights and adoption of children formerly in their care.   We hold, as did the trial court, that former foster parents do not have standing to do so.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the court, in which RICHARD H. DINKINS and W. NEAL MCBRAYER, JJ., joined.

Karl M. Braun, Lucas Davidson, and Joanna L. McCracken, Nashville, Tennessee, and Kendall A. Sykes, Oklahoma City, Oklahoma, for the appellants, David Sheldon Hodgin, Jr. and Kimberly Ellen Hodgin.

Herbert H. Slatery, III, Attorney General and Reporter, and Alexander S. Rieger, Assistant Attorney General, for the appellee, Tennessee Department of Children's Services.

Anita Lynn Vinson Coffinberry, Erin, Tennessee, for the appellee, John M.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Sonya M. was born in Nebraska in July 2004.   Sonya's father, John M. ("Father"), was awarded custody of the child in 2005.   He allowed the child to travel to Tennessee with one of her caregivers, and in October 2005, after the caregiver's parents contacted the sheriff's department, the child was adjudicated dependent and neglected.   The Department of Children's Services ("DCS") was given custody of Sonya, and in April 2006, the child

was officially placed in the home of foster parents David and Kimberly Hodgin.

In April 2006, Father was indicted on federal charges and was taken into custody. That fall, he pled guilty to the federal charge of unlawful transport of firearms and was sentenced to fifteen years in prison.

In July 2006, the Hodgins filed a petition to terminate parental rights and to adopt Sonya, in the Chancery Court of Dickson County. The chancery court terminated the rights of Sonya's mother[1] and Father and approved her adoption by the Hodgins. Father appealed the termination of his parental rights and the adoption from prison. *See In re S.J.M.*, No. M2009-01080-COA-R3-PT, 2009 WL 4039430, at *1 (Tenn. Ct. App. Nov. 20, 2009). This Court found that, contrary to the trial court's determination, the issue of Father's sentence as a ground for termination under Tenn. Code Ann. § 36-1-113(g)(6) had not been tried by consent of the parties. *Id.* at *3. Therefore, the adoption was vacated, and Sonya was returned to the legal custody of DCS. *Id.* at *4. DCS again placed the child with the Hodgins.

Sonya continued to live with the Hodgins until January 2014. At that time, Father was no longer in prison,[2] and DCS removed Sonya from the Hodgins' care and sent her to live with Father in Nebraska on a trial home visit. Sonya had not seen Father since she was an infant.

On June 6, 2014, the Hodgins filed a petition to terminate Father's parental rights and to adopt Sonya. Father filed a motion to dismiss pursuant to Tenn. R. Civ. P. 12.02(1) and (6) for lack of standing. DCS filed a motion for judgment on the pleadings asserting that the Hodgins lacked standing to file a petition to terminate parental rights and adopt Sonya.

On September 16, 2014, the trial court entered a memorandum opinion concluding that the Hodgins' petition should be dismissed. The court construed Tenn. Code Ann. § 36-1-113(b)(1) to mean that plaintiffs' "standing to file a termination of parental rights action depends upon their standing to file an adoption action." Because, under Tenn. Code Ann. § 36-1-115(b), the Hodgins did not have "physical custody or . . . the right to receive custody of the child sought to be adopted as provided in § 36-1-111(d)(6) [surrender] at the time the petition is filed," the trial court concluded that they did not have

---

[1] Sonya's mother did not appear or defend the termination of her parental rights, and she is not involved in the current appeal.

[2] Father testified that his sentence was reduced from fifteen to seven and one-half years for his cooperation in a homicide investigation. *In re S.J.M.*, 2009 WL 4039430, at *2.

standing. The Hodgins filed a motion to alter or amend. On October 3, 2014, the trial court entered its final order dismissing the termination and adoption petition. The motion to alter or amend was denied on October 28, 2014.

On appeal, the only issue is whether the trial court erred in determining that the Hodgins lacked standing to file a petition to terminate Father's parental rights and for adoption.

## STANDARD OF REVIEW

Making a determination regarding standing under Tenn. R. Civ. P. 12.02(6) is a question of law; therefore, our review is de novo with no presumption of correctness. *Town of Collierville v. Town of Collierville Bd. of Zoning Appeals*, No. W2013-02752-COA-R3-CV, 2015 WL 1606712, at *3 (Tenn. Ct. App. Apr. 7, 2015). If "matters outside the pleadings are presented to and not excluded by the court, the motion [to dismiss pursuant to Tenn. R. Civ. P. 12.02(6)] shall be treated as one for summary judgment . . . ." Tenn. R. Civ. P. 12.02. Because we are faced with a question of law, the standard of review is the same: de novo with no presumption of correctness.

Statutory interpretation is an issue of law which we review de novo on appeal, granting the trial court's interpretation no deference. *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015) (citing *Mills v. Fulmarque*, 360 S.W.3d 362, 366 (Tenn. 2012)). When interpreting a statute, we strive to "'ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" *Id.* (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). We are to presume that every word used in a statute has meaning and serves a purpose. *Nye v. Bayer Cropscience, Inc.*, 347 S.W.3d 686, 694 (Tenn. 2011). The most important feature of a statute is the language used. *In re Kaliyah S.*, 455 S.W.3d at 552.

## ANALYSIS

Both terminations of parental rights and adoptions are governed exclusively by statute in Tennessee. *Osborn v. Marr*, 127 S.W.3d 737, 739 (Tenn. 2004); *In re Shelby L. B.*, No. M2010-00879-COA-R9-PT, 2011 WL 1225567, at *5 (Tenn. Ct. App. Mar. 31, 2011). Tennessee Code Annotated section 36-1-113(b)(1) designates the parties who have standing to file a petition to terminate parental rights. That subsection provides, in pertinent part:

> *The prospective adoptive parent or parents*, including extended family members caring for a related child, any licensed child-placing agency having custody of the child, the child's guardian ad litem, or the department shall

have standing to file a petition pursuant to this part or title 37 to terminate parental or guardianship rights of a person alleged to be a parent or guardian of the child. . . . *The prospective adoptive parents . . .* shall have standing to request termination of parental or guardianship rights in the adoption petition filed by them pursuant to this part.

Tenn. Code Ann. § 36-1-113(b)(1) (emphasis added). The Hodgins claim that they are "prospective adoptive parents."

The term "prospective adoptive parents" is defined in Tenn. Code Ann. §36-1-102(41) as follows:

[A] non-agency person or persons who are seeking to adopt a child and who have made application with a licensed child-placing agency or licensed clinical social worker or the department for approval, or who have been *previously approved*, to receive a child for adoption, or who have received or who expect to receive a surrender of a child, or who have filed a petition for termination or for adoption;

(Emphasis added). The Hodgins assert that they were "previously approved" by DCS to adopt Sonya. In making this argument, the Hodgins rely upon a foster care review summary from March 2010 showing a permanency goal of adoption by the Hodgin family and the termination of Father's parental rights. This foster care review occurred almost four years prior to the filing of the Hodgins' petition in June 2014. By that time, however, DCS had changed its permanency goals for Sonya, removed Sonya from the Hodgins' care, and placed her with Father. Thus, by the time they filed their petition for termination and adoption, the Hodgins' classifcation as "previously approved" to adopt Sonya was nullified by DCS's subsequent actions.

Further, as the trial court emphasized, the Hodgins cannot be prospective *adoptive* parents unless they have standing to file a petition for adoption. In the case of *In re Shelby L.B.*, 2011 WL 1225567, at *10, this Court construed the legislative scheme for termination and adoption "as contemplating that a 'prospective adoptive parent' is one who not only harbors the intention or desire to adopt, but who also has the legal capacity or ability to do so." Tennessee Code Annotated section 36-1-115(b) imposes the following requirements for persons filing an adoption petition:

The petitioners must have physical custody or must demonstrate to the court that they have the right to receive custody of the child sought to be adopted as provided in § 36-1-111(d)(6) [statute regarding surrender/parental consent] at the time the petition is filed, unless they are filing an intervening petition

4

seeking to adopt the child.

Thus, a person or persons filing for adoption must have physical custody of the child or the right to receive physical custody pursuant to a valid surrender. Tenn. Code Ann. § 36-1-111(d)(6); *see In re Adoption of M.J.S.*, 44 S.W.3d 41, 49 (Tenn. Ct. App. 2000) (discussing adoption statutes). In this case, when they filed their petition, the Hodgins did not have custody of Sonya, and they did not have the right to receive custody pursuant to a surrender.

While we recognize the harsh consequences of this decision, we must agree with the trial court that the Hodgins lacked standing to bring an adoption or a parental termination action. As a result, the trial court did not err in granting Father's motion to dismiss and DCS's motion for judgment on the pleadings.

CONCLUSION

The judgment of the trial court is affirmed. Costs of appeal are assessed against the appellants, and execution may issue if necessary.

_____
ANDY D. BENNETT, JUDGE