IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 26, 2001 Session

IN RE: ADOPTION OF A. K. S. R. AND A. T. S. R.

Appeal from the Chancery Court for Cheatham County
No. 10387     Leonard W. Martin, Chancellor

No. M2000-03081-COA-R3-CV - Filed October 12, 2001

This appeal stems from a petition by both a paternal aunt and the foster parents to adopt twenty-month-old twin girls. The trial court found that the paternal aunt should adopt the children because relatives have preference over non-relatives in adoption proceedings and the foster parents did not meet the terms of the contract they signed with the Department of Children's Services. We reverse the decision of the trial court and grant the petition of the foster parents.

Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court
Reversed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and PATRICIA J. COTTRELL, joined.

Paul A. Rutherford, Nashville, Tennessee, for appellants, Glendon Todd Williams and Donna Elaine Williams.

Andrew R. Tillman and Summer H. Stevens, Knoxville, Tennessee, for appellee, Robbie Fulford.

Paul G. Summers, Attorney General and Reporter; Elizabeth C. Driver, Assistant Attorney General, for the appellee, State of Tennessee, Department of Children's Services.

OPINION

I.

A.K.S.R. and A.T.S.R., twin girls, were born prematurely on April 1, 1999. On April 13, 1999, the Department of Children's Services ("DCS") petitioned for custody. After receiving custody, DCS searched for a temporary placement for the girls. DCS initially approached the appellee, Robbie Fulford, who is the children's paternal aunt and had previously adopted the twins' older brother. She stated that she did not feel up to caring for their brother and the twins. DCS then considered the maternal grandmother, who lived in Florida. Appellee supplied information to DCS

that helped them determine that the grandmother was not a suitable placement. However, appellee still did not want to bring the girls into her home. DCS then placed the children in the foster home of the appellants, Todd and Donna Williams on April 19, 1999. The appellants signed two Child Placement Contracts (the "Contracts") with DCS, one for each child.

In March of 2000, appellee contacted DCS and informed them that she wished to adopt the girls. DCS informed the appellants that they planned to place the twins with appellee upon approval of a home study. DCS did a home study and found appellee a suitable permanent placement. DCS informed the appellants on April 19, 2000 of its decision that appellee would be given permanent custody of the twins. DCS then created a plan for transferring custody.

The appellants filed a Petition for Termination of Parental Rights and a Petition for Adoption on April 25, 2000 in the Chancery Court of Cheatham County. Appellee filed an intervening petition on the same date. DCS also filed an intervening petition on May 26, 2000.

While awaiting action in the chancery court, DCS notified appellants on July 7, 2000 of their intent to move the children to appellee. Appellants appealed this decision to an administrative judge who upheld DCS's decision. The chancery court then ordered that the twins' placement and the visitation schedule remain as it was. The children continued to reside with the appellants and have extended overnight visitation with appellee.

The chancery court then held a bifurcated hearing to address both petitions November 16, 2000. The trial court granted the Petition for Termination of Parental Rights. The trial court then turned to the question of whether the appellants or appellee should be allowed to adopt the twins. The trial court found that the appellee should be given custody of the children for several reasons and found that the appellants had broken the terms of their Child Placement Contracts with DCS.

This court stayed the trial court's final order with regard to the transfer of custody. Therefore, the twins continue to reside with appellants and have visitation with appellee.

## II.

This court must review this case *de novo* on the record of the trial court with a presumption of correctness of the trial court's findings of fact, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). When a court is determining the question of adoption, the court's focus should be on what is in the best interest of the child. *Sonet v. Unknown Father of Joseph Daniel Hasty*, 797 S.W.2d 1, 5 (Tenn. Ct. App. 1990); *In re Adoption of Hart,* 709 S.W.2d 582 (Tenn. Ct. App. 1984). And where the interest of a child and the interest of an adult are in conflict, such conflict must be resolved in favor of the child. Tenn. Code Ann. § 36-1-101(d).

The trial court found that appellee should have custody of the twins for several reasons:

The Court finds that Robbie Fulford is the paternal aunt of these children and the adopted parent of their only sibling.

The Court finds that Robbie Fulford is a fit person to have the custody of the minor children.

The Court finds that Robbie Fulford is physically, mentally, and financially able to provide for the children.

The Court finds that A.K.S.R. and A.T.S.R. are suitable children for adoption.

The Court finds the adoption by Robbie Fulford is in the best interest of A.K.S.R. and A.T.S.R.

The Court finds Robbie Fulford has previously adopted the older sibling of A.K.S.R. and A.T.S.R., and that the law prefers relative placement with Robbie Fulford in order to keep the family unit together.

The Court finds that if the children did not have suitable relatives for placement and adoption, the foster parents who have had the children in their home certainly should be given preference over anybody else in the world; but between the foster parents and these children being with their relatives, they need to be with their relatives.

The Court finds that Collective Exhibit Number 3 in items eight and nine of the contract the foster parents signed with the State of Tennessee, Department of Children's Services, provides "That we" – that's the foster parents – "that we will not attempt to adopt, file a petition to adopt, or take any steps whatsoever to adopt this child unless after consultation with department staff, the decision is made that adoption by us is in the child's best interest." The Court finds that Donna Elaine Williams and Glendon Todd Williams did not do that. The filing of their adoption petition was contrary to what they agreed to do with the department.

Therefore, the main issues in this case are whether the preference under the law for adoption of the children lies with the foster parents or family members in this situation and whether the evidence preponderates against the trial court's finding that the children's best interests would be served by allowing the appellee to adopt them.

### III.
### Tennessee Code Annotated § 36-1-115(g)(1)

Tennessee Code Annotated § 36-1-115(g)(1) reads as follows:

When a child is placed in a foster home by the department or otherwise, and becomes available for adoption due to the termination or surrender of all parental or guardianship rights to the child, those foster parents shall be given first preference to adopt the child if the child has resided in the foster home for twelve (12) or more consecutive months immediately preceding the filing of an adoption petition.

On appeal, DCS argues that Tennessee Code Annotated § 36-1-115 does not create a conclusive presumption. DCS cites Tennessee Code Annotated § 37-2-403(a)(1) and (d) for the proposition that there is a preference for family placement. It is true that Tennessee Code Annotated § 37-2-403(a)(1) and (d) create a preference for family placement. However, this section of the code concerns foster care of children, as opposed to Tennessee Code Annotated § 36-1-115 which concerns adoption.

We addressed a similar argument in *In re: S.B.*, No. M1999-00140-COA-R3-CV, 2000 WL 575934 (Tenn. Ct. App. 2000). We specifically stated in *In re: S.B.* that Tennessee Code Annotated § 37-2-403(a)(1) and (d) applied to "placement immediately after removal from the home." *In re: S.B.*, 2000 WL 575934, at *4.

In this case, the twins became available for adoption when the trial court terminated the parental rights of the twins' natural parents. The twins had lived with the appellants for twelve months before they filed their adoption petition. We agree that the preference is not conclusive, but in the absence of evidence requiring a different result, the statutory preference would prevail. Under the controlling statute, the appellants would have first preference to adopt the children.

## IV.
## Child Placement Contract

We now turn to the provisions of the contracts. The trial court cites the provisions of the contracts as a basis for the granting of custody to the appellee. Provision 9 of the contracts, which is quoted by the trial court, states in full:

> That we will not attempt to adopt, file a petition to adopt, or take any steps whatsoever to adopt this child, unless, after consultation with Department staff, the decision is made that adoption by us is in the child's best interest. *It is our understanding, however, that if the child has been in our home for one year and we meet the qualifications required of other adoptive parents, that we will be given first preference for adoption of this child.*

(Emphasis added). The trial court and the appellee's brief imply that the appellants did not follow the provisions of the contracts that they signed. However, the appellants received the twins on April 19, 1999 and received notice from DCS that the appellee would be given permanent custody of the twins on April 19, 2000, when the children had been in the appellants' home for one year. According to the provisions of the contract, at that point the appellants should be given preference for the adoption of the children. It does not appear therefore that the appellants broke their contract with DCS.

We find that the appellants did indeed follow the provisions of the contracts, therefore, this cannot be a basis for denying the appellants the ability to adopt the children.

-4-

# V.
## Best Interest of the Children

Since there is not a preference for family placement under the Code provisions and the contracts, "the best interest of the child is the paramount consideration in an adoption proceeding." *Sonet v. Unknown Father of Joseph Daniel Hasty*, 797 S.W.2d 1, 5 (Tenn. Ct. App. 1990). In *In re: S.B.*, while discussing the applicable statute, we stated that, "[w]e find nothing in this statute to indicate that an ongoing placement with a non-relative that is otherwise serving the child's best interest must be ended if a family member later seeks to adopt the child." *In re: S.B.*, 2000 WL 575934, at *4.

The twins had been living with the appellants since April 19, 1999. The guardian ad litem's report filed with the trial court stated that the appellants had been meeting the needs of the twins physically, mentally and emotionally. The DCS Quarterly Report from April 25, 2000 also stated that the twins were very good babies and "d[id] not have any behavioral problems and their emotional needs are being met." The report went on to state, "[A.K.S.R. and A.T.S.R.] are happy, healthy babies. They are up to date on all of their well baby check ups and immunizations." Clearly, the twins have been well-cared for while residing with the appellants.

In November of 2000, the time of the hearing, the appellants were both in their mid-thirties. Mrs. Williams has lupus, but at the time of the hearing, it had been in remission for five years. They had been foster parents for a total of nineteen months to various children and had cared for fifteen to twenty foster children over the course of that time. Mr. Williams had been working for the same company for seventeen years. The family's income is around $55,000 a year. The appellants also have family in the area, including brothers and sisters, aunts and uncles, and cousins.

At the time of the hearing, Appellee was in her mid-to-late fifties. She had adopted the twins' sibling, M.T.R.F., on June 10, 1998, when he was almost seventeen months old. Appellee did not visit with the twins until the end of February or beginning of March of 2000 according to her testimony at the hearing. Overnight visits with the twins did not begin until late April of 2000. At the time of the hearing, appellee lived in a house with her adopted son, her natural son, and her two grandchildren. She did not work due to a previous back injury in 1984. She had cancer in 1991 and needed Medicare, and she was then approved to collect Social Security disability. For herself and her adopted son, she received between $1800 and $1900 a month in Social Security benefits, at the time of the hearing. She stated that if she was allowed to adopt the twins, she would receive additional payments for them after they resided with her for a year. She owns her home and land in Tennessee and owns some rental property in Florida. As for relatives in the area, appellee's mother and an aunt and uncle live in the area. She has a sister and three half-brothers in Florida, one of the brothers being the father of M.T.R.F., A.K.S.R. and A.T.S.R.

In its ruling, the trial court based its decision on giving a preference to relatives in an adoption situation. The trial court stated, "the law with regard to children first prefers parents, next relatives, kinfolks. . . . if these little girls didn't have relatives over here, then these folks, the foster

parents who have had these children in their home, certainly should be given preference over anybody else in the world." The trial court, therefore, found that both the appellants and the appellee would make adequate parents for the twins. The deciding factor for the court was the preference for relatives. As we have seen in the applicable statute, there is not a preference for relatives after the children have been in foster care for twelve months.

The appellee initially refused even temporary care of the children when first approached by DCS, and then did not visit them for eleven months. She stated that after the first visit in March of 2000, she changed her mind and decided she wanted to adopt the twins. We believe it would be adverse to the best interest of the children to totally uproot them from the home and care that they have known for the first year of their lives. When DCS made its decision to place the children with the appellee permanently, the children had not even spent a night at appellee's house.

We believe that in this particular situation, continuity of placement is the most important factor when determining what is in the children's best interest. The children have lived with the appellants from the time they were eighteen days old. Clearly, the children would have forged a parent-child bond with the appellants who are the only caretakers the children have even known. The twins refer to the appellants as mommy and daddy. It is clear that the guardian ad litem, DCS, and even the trial court have found the appellants caring parents to the twins. We think the evidence preponderates against the trial court's finding that adoption by the appellee would be in the best interest of the children.

For these reasons, we find that the trial court's decision should be reversed, and the appellants' petition for adoption of A.K.S.R. and A.T.S.R. should be granted. We remand the cause to the Chancery Court of Cheatham County for any further proceedings necessary. Tax the costs on appeal to the appellee, Robbie Fulford, and DCS equally.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.