IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
December 13, 2001 Session

## In re: K.A.Y. and A.M.Y.

**Appeal from the Chancery Court for Knox County**
**No. 145426-3      Sharon Bell, Chancellor**

**FILED FEBRUARY 28, 2002**

**No.  E2001-00398-COA-R3-CV**

Wayne and Mary Stuart ("Stuarts"), as foster parents, had physical custody of a set of twins ("Children") for approximately a year and a half when the Department of Children's Services ("DCS") removed the Children from the Stuarts' home and placed them with Paul and Susan Young ("Youngs"). The Stuarts later filed a petition in Knox County Juvenile Court seeking custody of the Children. While the custody matter was pending, the Youngs filed an adoption petition in the Trial Court which was granted. The Stuarts filed a motion to intervene and to set aside the adoption decree. The Trial Court granted this motion. The Youngs filed a Motion for Summary Judgment and cited three grounds in support of their motion: (1) the requirement that adoptive parents have custody of the child; (2) DCS's consent to the adoption; and (3) the statutory foster parent preference for adoption. Without deciding the Stuarts' petition for custody, the Trial Court granted summary judgment as a matter of law to the Youngs. The Stuarts appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed;**
**Case Remanded.**

D. MICHAEL SWINEY, J., delivered the opinion of the court, in which HOUSTON M. GODDARD, P.J., and CHARLES D. SUSANO, JR., J., joined.

Scarlett A. Beaty, Knoxville, Tennessee, for the Appellants, Wayne and Mary Stuart.

Dawn Coppock, Strawberry Plains, Tennessee, for the Appellees, Paul and Susan Young.

Paul G. Summers and Douglas Earl Dimond, Nashville, Tennessee, for the Appellee, State of Tennessee.

## OPINION

## Background

The Children were born in September 1995. The Children are twins and have biological half-siblings who also are twins. Sometime prior to the proceedings in this matter, the Stuarts adopted the Children's half-siblings. From May 1996, through November 1998, the Stuarts had physical custody of the Children through foster care. For reasons not clear from the record on appeal, the Department of Children's Services ("DCS") removed the Children from the Stuarts' home and, thereafter, placed the Children with the Youngs in December 1998. The parental rights of the Children's biological mother were terminated in August 1998.

In May 1999, the Stuarts filed a petition in Knox County Juvenile Court seeking custody ("Custody Petition") of the Children. The record on appeal shows that DCS filed a motion to dismiss the Stuarts' Custody Petition which the Juvenile Court denied by Order entered in July 1999. The Juvenile Court's Order also granted a motion for discovery filed by the Stuarts and ordered visitation between the Children, who then were living with the Youngs, and their biological half-siblings, who were living with their adoptive parents, the Stuarts.

The Juvenile Court entered an order in October 1999 terminating the Children's biological father's parental rights and granting custody and guardianship to DCS. The Stuarts' Custody Petition had not been adjudicated by the Juvenile Court when this October 1999 Order was entered.

In December 1999, the Youngs filed a petition for adoption of the Children ("Petition for Adoption") in Knox County Chancery Court ("Trial Court") alleging that the Children had continuously resided with them for a twelve-month period since December 1998. In their Petition for Adoption, the Youngs also stated they had no information regarding any custody proceeding other than the Stuarts' pending custody matter in Juvenile Court. The Youngs also alleged that besides the DCS Putative Father Registry, they knew of no other persons entitled to notice of their petition under Tenn. Code Ann. § 36-1-117.

On the same date that the Petition for Adoption was filed, the Trial Court entered a Final Decree of Adoption ("Adoption Decree") granting the Youngs' petition, holding that the Children's adoption by the Youngs would serve the Children's best interests. The Trial Court also stated, in its Adoption Decree, that while it was aware of the Stuarts' pending custody action in Juvenile Court, the Youngs had physical custody of the Children for twelve months and, therefore, were entitled to the statutory preference for adoption of the Children provided by Tenn. Code Ann. §§ 36-1-115(g) and 37-2-415(a)(20). The Trial Court also stated in the decree that all persons entitled to notice of the adoption proceedings had been given notice and that consent to the adoption by the Children's guardian, DCS, had been given.

Thereafter, in April 2000, the Stuarts filed a Motion to Intervene and to Set Aside Final Adoption Order ("Motion to Intervene"). As grounds for their Motion to Intervene, the Stuarts

-2-

alleged that the Adoption Decree should be set aside under Tenn. R. Civ. P. 60.02 due to the Youngs' misconduct, fraud and misrepresentation. The Stuarts alleged the Youngs did not inform the Trial Court about a number of matters, including the Stuarts' pending custody action in Juvenile Court and the Stuarts' previous adoption of the Children's biological half-siblings. Thereafter, the Stuarts filed an amended Motion to Intervene stating that since filing their first motion, they had learned that the Youngs had informed the Trial Court of the Stuarts' pending custody action.[1]

In July 2000, the Youngs filed a motion to dismiss the Stuarts' Motion to Intervene. In August 2000, the Stuarts filed a second amended Motion to Intervene in which the Stuarts challenged the constitutionality of several adoption statutes, including Tenn. Code Ann. §§ 36-1-108, 36-1-115, 36-1-116 and 36-1-117.[2] Due to the constitutional challenge raised by the Stuarts in their second amended Motion to Intervene, the State Assistant Attorney General filed a Notice of Appearance for the limited purpose of defending the constitutionality of the Tennessee statutes placed in question.

In October 2000, the Trial Court filed an Opinion holding that the Stuarts should be allowed to intervene in the adoption matter pursuant to Tenn. R. Civ. P. 19. The Trial Court also set a pre-trial hearing to take place the following month at which the Trial Court would determine both whether the Adoption Decree should be set aside and the Stuarts' constitutional challenge to the foster parent preference found at Tenn. Code Ann. § 36-1-115(g)(1). The Trial Court entered an Order in November 2000, reflecting the findings contained in its Opinion.

The Trial Court held the pre-trial hearing in November 2000, and, thereafter, entered a Pre-Trial Order in which it suspended the Adoption Decree pending further order of the Trial Court; reinstated DCS' guardianship of the Children; and allowed the Youngs to maintain physical custody of the Children. The Pre-Trial Order also provided that the parties stipulated that DCS consented to the Youngs' adoption of the Children but had not consented to the adoption of the Children by the Stuarts. The Pre-Trial Order also provided that the Youngs would file a motion for summary judgment based upon the following issues:

> [a] The Stuarts can not [sic] prosecute an action to adopt without physical custody of the children.
>
> [b] The unavailability of the Tennessee Department of Children's Services' consent [to the Stuarts], which is required pursuant to T.C.A. § 36-1-117(a)(1).

---

[1] The record on appeal shows that the Trial Court entered an agreed order allowing the Stuarts' amendment to their Motion to Intervene.

[2] The record on appeal does not contain an order allowing the second amendment to the Stuarts' Motion to Intervene. This issue, however, was not raised at either the Trial Court level or on appeal.

[c] Whether the statutory foster parent preference found at T.C.A. § 36-1-115(g)(1) precludes any other person from being considered as adoptive parents.

The Pre-Trial Order also stated that the parties agreed these matters could be resolved without the offering of proof. Moreover, the Pre-Trial Order provided that the Stuarts' constitutional challenge to Tenn. Code Ann. § 36-1-115(g)(1), "shall be heard only if necessary after the resolution of the other issues raised in the motion for summary judgment."

Thereafter, the Youngs filed a Motion for Summary Judgment covering the above-outlined issues. The Stuarts filed a Response to Motion for Summary Judgment in which they argued, among other things, that the issue before the Trial Court was not whether the Stuarts should be granted an adoption of the Children. Instead, the Stuarts contended that while adoption of the Children is their ultimate goal, the issue for the Trial Court's determination was whether the Stuarts' pending custody matter should be adjudicated before the Youngs' Petition for Adoption was decided. In February 2001, the Trial Court entered Judgment granting the Youngs' motion on all three grounds. The Trial Court, in its Judgment, reinstated the Adoption Decree.

The Stuarts appeal. We affirm.

### Discussion

On appeal and although not exactly stated as such, the Stuarts raise the following issues: (1) whether the Stuarts were entitled to notice of the Youngs' Petition for Adoption and to be joined as parties to the Youngs' adoption action under Tenn. R. Civ. P. 19; (2) if the Stuarts were entitled to be joined as parties in the Youngs' adoption matter, whether the Trial Court should have set aside the first Adoption Decree under Tenn. R. Civ. P. 60 and decided the Stuarts' pending Custody Petition before it adjudicated the Youngs' Petition for Adoption; (3) whether the Trial Court erred in granting summary judgment to the Youngs before determining whether the Stuarts' Custody Petition should have been joined with the Youngs' Petition for Adoption and before the Custody Petition was adjudicated; and (4) whether the statutory preference for foster parents in adoption proceedings provided by Tenn. Code Ann. § 36-1-115(g)(1) is an unconstitutional violation of the Equal Protection guarantees of the United States and Tennessee Constitutions. Central to the Stuarts' issues on appeal is whether or not the Trial Court was required to decide the Stuarts' Custody Petition before it decided the Youngs' Motion for Summary Judgment. Accordingly, while the judgment from which the Stuarts appealed is one granting summary judgment, the Stuarts, in effect, do not contest the correctness of the Trial Court's grant of summary judgment as a matter of law to the Youngs if the Trial Court was not required first to decide the Custody Petition.

The Youngs contend the Stuarts' Custody Petition was suspended when the Youngs filed their Petition for Adoption. The Youngs also argue, on appeal, that the Stuarts were not necessary parties to the adoption matter and were not entitled to notice of their Petition for Adoption. The State, on appeal, contends that the Stuarts' arguments regarding whether they were entitled to notice of the adoption proceedings and to be joined as parties and whether the Adoption Decree

-4-

should have been set aside are moot. The State argues these issues are moot because the Stuarts were, indeed, allowed to intervene as parties in the Youngs' adoption proceeding and the Trial Court did suspend the initial Adoption Decree and reinstated the Adoption Decree only after the Stuarts were allowed to intervene and participate.

In Tennessee, the adoption statutes are to be strictly construed since they are in derogation of the common law. *Johnson ex rel. Johnson v. Wilbourn*, 781 S.W.2d 857, 859 (Tenn. Ct. App. 1989). Tenn. Code Ann. § 36-1-101(a) sets forth the purpose of the adoption statutory scheme, and provides, in pertinent part, as follows:

> (a) The primary purpose of this part is to provide means and procedures for the adoption of children and adults that recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption, especially those of the adopted persons, . . . and to those ends seek to ensure, to the greatest extent possible, that: . . .
>
> (2) Children are placed only with those persons who have been determined to be capable of providing proper care and a loving home for an adopted child;
>
> (3) The rights of children to be raised in loving homes which are capable of providing proper care for adopted children and that the best interests of children in the adoptive process are protected;
>
> (4) The adoptive process protects the rights of all persons who are affected by that process and who should be entitled to notice of the proceedings for the adoption of the child;
>
> (5) The adoption proceedings are held in an expeditious manner to enable the child to achieve permanency, consistent with the child's best interests, at the earliest possible date. . . .

Tenn. Code Ann. § 36-1-101(a) demonstrates that the best interests of the child whose adoption is at issue is paramount. Accordingly, when a court is determining an adoption petition, its primary concern is what will serve the best interest of the child. *See In re Adoption of A.K.S.R.*, No. M2000-03081-COA-R3-CV, 2001 Tenn. App. LEXIS 766, at * 4 (Tenn. Ct. App. Oct. 12, 2001), *appl. perm. app. denied 2/11/02*.

Initially, we will determine the Stuarts' first two issues on appeal. The Stuarts argue they were entitled to notice of the Youngs' adoption action and were entitled to be joined as parties to the adoption proceeding under Tenn. R. Civ. P. 19. Next, the Stuarts contend the Trial Court should have set aside the first Adoption Decree and decided their Custody Petition before deciding the Youngs' Petition for Adoption.

The record on appeal shows that the Trial Court did suspend the Adoption Decree and granted the Stuarts' Motion to Intervene as parties to the adoption proceeding. With respect to the Stuarts' argument that they were entitled to notice of the adoption action, we look to Tenn. Code Ann. §§ 36-1-117(a)(1) and (d) which list the necessary parties to an adoption proceeding and the parties who are entitled to notice of the matter. Former foster parents, such as the Stuarts, are not listed by these statutes. *See id.*[3] Nevertheless, the record on appeal shows that the Stuarts were allowed to intervene as parties by the Trial Court. The State contends on appeal that because the Trial Court allowed the Stuarts to intervene in the adoption matter and did set aside the initial Adoption Decree, the Stuarts have already received their requested relief, and therefore, these issues are moot. We agree, and accordingly, hold that the Stuarts' first two issues on appeal are without merit.

Next, we address the Stuarts' argument that the Trial Court erred in granting the Youngs' Motion for Summary Judgment before determining whether the Stuarts' pending Custody Petition should have been joined with the Petition for Adoption and before adjudicating the Custody Petition. We first note that, as discussed, the Trial Court allowed the Stuarts to join the Youngs' adoption matter pursuant to Tenn. R. Civ. P. 19. In addition, the record on appeal shows that the Trial Court had before it only the Stuarts' Motion to Intervene and did not have before it the Custody Petition filed in Juvenile Court. The Stuarts' Motion to Intervene and subsequent amendments thereto are not clear as to whether the Stuarts were intervening for the purpose of obtaining custody or for the purpose of contesting that the adoption of the Children by the Youngs was in the Children's best interests. At any rate, the crux of the Stuarts' argument on appeal is that the Trial Court erred in failing first to decide and grant their Custody Petition before adjudicating the Youngs' Motion for Summary Judgment. The Stuarts, in effect, do not argue on appeal that, if the Trial Court

---

[3] Tenn. Code Ann. § 36-1-117(a)(1), provides, in pertinent part, the following:

> Unless the parent, the legal parent, or the guardian, or, . . . the putative biological father of the child has surrendered parental or guardianship rights to the child, has executed a parental consent which has been confirmed by the court, has waived such person's rights pursuant to § 36-1-111(w), or unless such person's rights have been terminated by the order of a court . . . , the legal parent(s), guardian of the person of the child or of an adult, and the biological parents of the child must be made parties to the adoption proceeding or to a separate proceeding seeking the termination of those rights, and their rights to the child must be terminated by a court to authorize the court to order the adoption of the child or adult by other persons.

Tenn. Code Ann. § 36-1-117(d) provides:

> (1) Other biological or legal relatives of the child or the adult are not necessary parties to the proceeding and shall not be entitled to notice of the adoption proceedings unless they are legal guardians as defined in § 36-1-102 or legal custodians of the person of the child or adult at the time the petition is filed.

> (2) The legal custodian of the child may only receive notice of the proceeding and may only present evidence as to the child's best interests.

was correct in first deciding the Youngs' Motion for Summary Judgment, the Trial Court erred in granting that Youngs' motion. Therefore, we need decide only whether the Trial Court erred in failing to decide the Stuarts' Custody Petition before it decided the Youngs' Motion for Summary Judgment.

The Youngs argue on appeal that the adoption statutes do not provide for such a "first filed, first decided" rule concerning the Stuarts' Custody Petition. We agree. [4] Under the relevant adoption statute, the Youngs' Petition for Adoption had priority over the Stuarts' pending Custody Petition. Under Tenn. Code Ann. § 36-1-116(f)(2), the filing of the Petition for Adoption suspended the Stuarts' pending custody matter. Tenn. Code Ann. § 36-1-116(f)(2) provides as follows:

> Except for proceedings concerning allegations of delinquency, unruliness, or truancy of the child under title 37, *any proceedings which may be pending seeking the custody or guardianship of the child who is in the physical custody of the [adoption] petitioners on the date the petition is filed, or where the petitioners meet the requirements of § 36-1-111(d)(6), shall be suspended pending the courts' orders in the adoption proceeding,* and jurisdiction of all other pending matters concerning the child and proceedings concerning establishment of the paternity of the child shall be transferred to and assumed by the adoption court; provided, that until the adoption court enters any orders affecting the child's custody or guardianship as permitted by this part, all prior parental or guardian authority, prior court orders regarding custody or guardianship, or statutory authority concerning the child's status shall remain in effect.

(emphasis added). In addition, Tenn. Code Ann. § 36-1-116(f)(1) provides that the trial court in which an adoption petition is filed has "exclusive jurisdiction of all matters pertaining to the child, including the establishment of paternity . . . except for allegations of delinquency, unruliness or truancy of the child . . . ." *In re M.J.S.,* 44 S.W.3d 41, 52 (Tenn. Ct. App. 2000).

Under Tenn. Code Ann. § 36-1-116(f)(2), the pending Custody Petition was suspended upon the Youngs' filing of their Petition for Adoption. Therefore, we hold that the Trial Court was not required to decide the Stuarts' Custody Petition before it decided the Youngs' Motion for Summary Judgment. In making this determination, in addition to Tenn. Code Ann. § 36-1-116(f)(2), we are guided by the legislative intent of the adoption statutes, outlined by Tenn. Code Ann. § 36-1-101(a), especially the interest of "achiev[ing] permanency, consistent with the child's

---

[4] The Youngs also contend on appeal that even before they filed their adoption petition, the Stuarts' pending custody matter was superceded by the Juvenile Court's grant of full guardianship of the Children to DCS in October 1999, citing Tenn. Code Ann. § 36-1-113(n). The language of the statute, however, provides that an order of full or partial guardianship supercedes "prior *orders* of custody or guardianship. . . ." The record on appeal shows that the Stuarts' Custody Petition had not been adjudicated when DCS obtained the order granting it guardianship of the Children.

best interests, at the earliest possible date . . ." Tenn. Code Ann. § 36-1-101(a)(5). We are also guided by this Court's determination that the adoption statutes are to be strictly construed. *Johnson ex rel. Johnson v. Wilbourn*, 781 S.W.2d at 859.

Next, we review the Stuarts' final argument on appeal in which they challenge the constitutionality of the statutory foster parent preference provided by Tenn. Code Ann. § 36-1-115(g)(1). The Stuarts do not challenge that the Youngs, as the Children's foster parents, fit this statutory preference but rather challenge the constitutionality of the statute. The Trial Court granted the Youngs' Motion for Summary Judgment, in part, because of this statutory preference.[5] Tenn. Code Ann. § 36-1-115(g)(1) states as follows:

> When a child is placed in a foster home by the department or otherwise, and becomes available for adoption due to the termination or surrender of all parental or guardianship rights to the child, those foster parents shall be given first preference to adopt the child if the child has resided in the foster home for twelve (12) or more consecutive months immediately preceding the filing of an adoption petition.

The Stuarts contend on appeal that this statutory preference violates the Equal Protection guarantees of the United States and Tennessee Constitutions. U.S. Const. art. XIV, § 1; Tenn. Const. art. XI, § 8. Under Tennessee law, however, "courts do not decide constitutional questions unless resolution is absolutely necessary for determination of the case and the rights of the parties." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995). Courts should avoid deciding constitutional matters if the case can be resolved on non-constitutional grounds. *Id.* As discussed, we have affirmed the Trial Court and decided this appeal on other non-constitutional grounds, finding no error in the Trial Court's failure to decide and grant the Stuarts' Custody Petition before deciding the Youngs' Motion for Summary Judgment in their favor so that the result would be the same even if no such preference existed. Since this matter was resolved by this Court on other non-constitutional grounds, the Stuarts' constitutional issue is pretermitted.

## Conclusion

---

[5] In granting the Youngs' Motion for Summary Judgment, the Trial Court held that this statutory preference precluded any other person from being considered as adoptive parents. This Court held, however, that the statutory preference in favor of foster parents is not conclusive. *See In re Adoption of A.K.S.R.*, 2001 Tenn. App. LEXIS 766, at * 7.

The judgment of the Trial Court is affirmed, and this cause is remanded to the Trial Court for such further proceedings as may be required, if any, consistent with this Opinion and for collection of the costs below. The costs on appeal are assessed against the Appellants, Wayne and Mary Stuart, and their surety.

_____
D. MICHAEL SWINEY, JUDGE