IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs February 3, 2010

IN RE DEVON W., ET AL.

Appeal from the Circuit Court for Blount County
No. E-22811      W. Dale Young, Judge

No. E2009-01326-COA-R3-JV - Filed April 16, 2010

Former foster mother and her new husband filed a motion to intervene and to set aside the adoption of three children by the current foster parents. The trial court denied the motion. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Lauretta Martin-Matera and Christopher P. Matera, Kingston, Tennessee, appellants, pro se.

N. David Roberts, Jr., Knoxville, Tennessee, for the appellees, Timothy John W. and Lisa Kaye W.

**OPINION**

I. BACKGROUND

Three minor children - Devon P.C., Heaven L.C. and Araya S.C. ("the Children") – were removed from their biological parents in Anderson County by the Tennessee Department of Children's Services ("DCS") on February 14, 2006. Despite attempts at reunification, DCS ultimately filed a petition to terminate the parental rights of the biological parents. After the parental rights were terminated,[1] full legal guardianship was awarded to DCS.

---

[1]Order of termination entered on July 8, 2008.

While in foster care, the Children were placed with Patrick Martin and Lauretta (Laurie) Martin ("Intervenor") on June 7, 2006. After Mr. Martin's death in December 2007, the Children remained with Intervenor.

DCS subsequently determined that Intervenor had engaged in inappropriate conduct against the Children and implemented a corrective action plan in April 2008. The plan required Intervenor to take remedial steps concerning her conduct and behavior towards the Children. However, DCS ultimately concluded that the corrective action plan was not being followed by Intervenor and removed the Children from her custody on July 15, 2008. DCS closed Intervenor's home to further participation in foster care.

Following the removal of the Children from Intervenor's home, they were placed with Timothy J. W. and Lisa K. W. ("Foster Parents"). Intervenor subsequently married Christopher Matera (collectively with Intervenor "Appellants").

On January 14, 2009, Foster Parents filed a petition to adopt the Children in Blount County Circuit Court. Omni Visions, a licensed child placing agency, prepared a confidential report for the trial court regarding the proposed adoptions. DCS consented to the adoptions, and a final order of adoption was entered on February 2, 2009.

On February 13, 2009, Appellants filed a motion to intervene and to set aside the adoption.[2] Appellants asserted that Blount County was not the proper venue for the adoption proceeding and that Foster Parents had filed the petition in Blount County to prevent Appellants from filing an intervening petition for adoption. Intervenor claimed that DCS was aware that she was asserting her right to custody of the Children as a result of the petition for custody she had filed in the Juvenile Court for Anderson County on January 12, 2009.

After conducting a hearing on May 8, 2009, the trial court denied the motion in an order entered on May 22, 2009. The trial court held:

> Upon consideration of the argument of counsel at the hearing, the Court finds that the movants do not [have] standing to challenge the final order of adoption that was entered. . . . The Court further finds that setting aside the adoption is not in the best interests of the children.

Appellants filed a timely appeal.

---

[2]Appellants attached an "Intervening Petition for Adoption," in which they sought to adopt the Children.

## II.  ISSUES

The issues raised by Appellants are restated as follows:

A.  Whether Appellants were denied due process in the trial court's allowance for a permissive venue.

B.  Whether Appellants, who were seeking custody for the best interests of the Children through other legal proceedings, were denied substantive due process in the trial court upholding the final adoption decree.

C.  Whether Appellants were denied fundamental rights guaranteed to foster parents in Tenn. Code Ann. §37-2-415(a)(1,2,4,6,11-20) in the trial court upholding the final adoption decree.


## III.  STANDARD OF REVIEW

The standard of review in this appeal is de novo upon the trial court's record with a presumption of correctness of the court's findings of fact unless the evidence preponderates otherwise.  Tenn. R. App. P. 13(d); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001).  We review a trial court's conclusions of law under a de novo standard upon the record with no presumption of correctness.  *Union Carbide Corp. v. Huddleston*, 854 S.W.2d 87, 91 (Tenn. 1993).


## IV.  DISCUSSION

As we stated in *In re K.A.Y.*, 80 S.W.3d 19 (Tenn. Ct. App. 2002),

In Tennessee, the adoption statutes are to be strictly construed since they are in derogation of the common law.  Tenn. Code Ann. §36-1-101(a) sets forth the purpose of the adoption statutory scheme, and provides, in pertinent part, as follows:

(a)  The primary purpose of this part is to provide means and procedures for the adoption of children and adults that recognize and effectuate to the greatest extent possible the rights and interests of persons affected by adoption, especially those of the adopted persons, . . . and to those ends seek to ensure, to the greatest extent possible, that:

-3-

* * *

(2) Children are placed only with those persons who have been determined to be capable of providing proper care and a loving home for an adopted child;

(3) The rights of children to be raised in loving homes [that] are capable of providing proper care for adopted children and that the best interests of children in the adoptive process are protected;

(4) The adoptive process protects the rights of all persons who are affected by that process and who should be entitled to notice of the proceedings for the adoption of the child;

(5) The adoption proceedings are held in an expeditious manner to enable the child to achieve permanency, consistent with the child's best interests, at the earliest possible date . . . .

Tenn. Code Ann. §36-1-101(a) demonstrates that the best interests of the child whose adoption is at issue [are] paramount. Accordingly, when a court is determining an adoption petition, its primary concern is what will serve the best interest of the child.

80 S.W.3d at 23-24 (internal citations omitted).


## A. VENUE

Tenn. Code Ann. §36-1-114 provides as follows:

The termination or adoption petition may be filed in the county:

(1) Where the petitioners reside;

(2) Where the child resides;

(3) Where the child resided when:

(A) The child became subject to the care and control of a public or private child-caring or child-placing agency; or

(B) The child became subject to partial or complete guardianship or co-guardianship pursuant to a surrender proceeding as provided in this part; or

(4) In which is located any licensed child-placing agency or institution operated under the laws of this state having custody or guardianship of the child or to which the child has been surrendered as provided in this part.

Tenn. Code Ann. §36-1-114 (Supp. 2009).

Appellants contend that DCS orchestrated the adoption in Blount County to avoid the intervening petition that had been filed earlier in another county. They assert that venue was proper in either the county where the Children and Foster Parents reside – Monroe – or in the county in which the Children resided when the biological parents' rights were terminated – Anderson.

In this case, DCS maintained full legal guardianship of the Children prior to their adoption. DCS has an office located in Maryville, Blount County, Tennessee, which makes venue proper in Blount County under Tenn. Code Ann. §36-1-114(4). There is no evidence of record to support the contention that the adoption petition was filed in Blount County for an improper reason.

## B. DUE PROCESS

Appellants argue that they were denied substantive due process because the trial court disregarded their attempts to seek custody of the Children. They contend it was improper to deny Intervenor the opportunity to testify and explain how she took care of the Children for over two years and described the bond she shared with the Children.

The adoption statutes contemplate intervention where a third party files a petition seeking to adopt the same child that is subject to a pending adoption petition. *In re Adoption of M.J.S.*, 44 S.W.3d 41, 51 (Tenn. Ct. App. 2000). In order to be eligible to *file* an intervening adoption petition, a petitioner need not have physical custody of the child or the right to receive custody of the child at the time of the filing, because the adoption statutes specifically except such an intervenor from the statutes' custody requirement at that point in the proceedings. *Id.*

However, in order to ultimately *prevail* on a petition to adopt to child, the intervening petitioner must meet the adoption statutes' custody requirement at a subsequent point in the

adoption proceedings. *Id.* Although Tenn. Code Ann. §36-1-115(b) excepts an intervening petitioner from the custody requirement at the time of *filing* the petition to adopt, other provisions of the adoption statutes do not contain such an exception and contemplate that the intervening petitioner will subsequently obtain custody of the child. *Id.* As further noted in *In re S.E.J.*, No. W2008-01354-COA-R3-PT, 2009 WL 2058790, at *3, 4 (Tenn. Ct. App. W.S., July 16, 2009) (perm. app. granted Nov. 16, 2009):

> For instance, the adoption statutes require adoption petitions to state, among other things, "[t]hat the petitioners have physical custody of the child or that they meet the requirements of §36-1-111(d)(6), and from what person or agency such custody was *or is to be obtained*." Tenn. Code Ann. §36-1-116(b)(5) (2005). Similarly, the trial court's final order of adoption must state "[t]he date when the petitioners acquired physical custody of the child and from what person or agency or by which court order." Tenn. Code Ann. §36-1-120(a)(4)(2005). In addition, Tennessee Code Annotated section 36-1-116(f)(1) provides:

> Upon the filing of the petition, the court shall have exclusive jurisdiction of all matters pertaining to the child, . . . except for allegations of delinquency, unruliness or truancy of the child pursuant to title 37; provided, that, unless a party has filed an intervening petition to an existing adoption petition concerning a child who is in the physical custody of the original petitioners, the court shall have no jurisdiction to issue any orders granting custody or guardianship of the child to the petitioners or to the intervening petitioners or granting an adoption of the child to the petitioners or to the intervening petitioners unless the petition affirmatively states, and the court finds in its order, that the petitioners have physical custody of the child at the time of the filing of the petition, entry of the order of guardianship, or entry of the order of adoption, or unless the petitioners otherwise meet the requirements of §36-1-111(d)(6).

> When faced with interpreting this statute in *In re Adoption of M.J.S.*, this Court stated:

> Although the foregoing statute is not a model of clarity, we interpret this statute to mean that, in cases where an intervening adoption petition has been filed, neither the original petitioners nor the intervening petitioners will be granted an adoption of the child unless the trial court finds that the petitioners have either physical custody of the child or the right to receive custody of the child pursuant to a validly executed surrender.

-6-

44 S.W.3d at 52.

2009 WL 2058790, at *3,4 (footnote omitted). Accordingly, the trial court would not be authorized to grant Appellants an adoption of the Children unless the court found that the Appellants had physical custody or the right to receive custody of the Children at some point during the adoption proceedings. *See* Tenn. Code Ann. §§36-1-116(f)(1), 36-1-120(a)(4).

At the time of the filing of the adoption petition on January 14, 2009, the Children had not resided in Intervenor's home for twelve or more consecutive months immediately preceding the filing of the adoption petition. Accordingly, Appellants were not entitled to the statutory first preference. *See* Tenn. Code Ann. §36-1-115(g)(1). Additionally, as revealed in the proposed intervening petition for adoption, an approved adoptive home study had not occurred in Appellants' home. Intervenor states as follows in the petition:

> That due to the previous foster parent relationship and the fact that the Minor Children resided with the Intervenor, Laurie Martin-Matera for over two (2) years, that the six-month waiting period, order of reference, preliminary home study, order of guardianship or custody, supervision, and preliminary and final court reports be waived pursuant to Tennessee Code Annotated §36-1-119(a) and (b), and that the Department do a background check on the new resident in the home, Chris Martin-Matera, prior to entering an Order of Adoption.

Due to failing to provide the trial court with an approved adoptive home study and DCS's closing of Intervenor's home, Appellants did not meet the requirements imposed upon persons seeking to adopt children in the custody of DCS. Thus, Appellants did not meet the requirements of either prong (g)(1) or (g)(2) of Tenn. Code Ann. §36-1-115.[3] The trial court did not err in refusing to allow Appellants to proceed with the intervening petition because

---

[3]Tenn. Code Ann. §36-1-115(g) provides:

(1) When a child is placed in a foster home by the department or otherwise, and becomes available for adoption due to the termination or surrender of all parental or guardianship rights to the child, those foster parents shall be given first preference to adoption of the child if the child has resided in the foster home for twelve (12) or more consecutive months immediately preceding the filing of an adoption petition.

(2) In becoming adoptive parents, the foster parents shall meet all requirements otherwise imposed on persons seeking to adopt children in the custody of the department, and shall be subject to all other provisions of this part.

Tenn. Code Ann. §36-1-115(g)(2005).

-7-

they cannot meet the custody requirement at all times pertinent to the adoption proceeding.

Additionally, Appellants have not established that even if the court were to vacate the final adoption decree, they could otherwise prevail in adopting the Children. Appellants would have to take the following steps, at a minimum, to adopt the Children if the final order of adoption were vacated: (1) Become approved foster parents able to seek custody (since you must first have physical custody in order to adopt a child), *see* Tenn. Code Ann. 36-1-115(b); (2) File a petition for custody and be awarded physical custody of the Children; (3) Present an approved adoptive home study to a trial court showing suitability for adoption, after first obtaining physical custody (due to DCS's closing of Intervenor's home, this home study would have to be submitted by a licensed child-placing agency); (4) Seek termination of the guardianship rights of DCS for one of the statutory grounds set forth at Tenn. Code Ann. §36-1-113(g)(1)-(9). If Appellants were unable to terminate the guardianship rights of DCS, they would be unable to adopt the Children without the voluntary consent of DCS. The agency will not give its voluntary consent to a home which it has closed for cause. Accordingly, even if the trial court set aside the final order of adoption, Appellants could not prevail in adopting the Children.

We note further that Tenn. Code Ann. §36-1-117(a)(1) and (d) list the necessary parties to an adoption proceeding and the parties who are entitled to notice of the matter. Former foster parents, such as Intervenor, are not listed. *See In re K.A.Y.*, 80 S.W.3d at 24. Foster parents in Tennessee have no state or federal statutory rights comparable to natural parents.

The relevant adoption statute only required two parties be joined in the adoption proceeding. One required party was the petitioners – Foster Parents – seeking the adoption of the Children, and the other party required to be joined would be any person with "parental or guardianship rights to the [C]hild[ren]." *See* Tenn. Code Ann. §36-1-117(a)(1). Former foster parents are not included among the individuals entitled to notice. Even other biological or legal "relatives" of the Children are not entitled to notice of the adoption proceeding if they have no parental or guardianship rights to the Children. Tenn. Code Ann. §36-1-117(d)(1). The only persons entitled to notice are legal guardians or any public or private agency having custody or complete or partial guardianship of the Children. In this case, DCS was the only "person" having custody or complete or partial legal guardianship of the Children. DCS had proper notice, a representative appeared at the proceedings, and the agency participated in the adoption proceedings by giving consent pursuant to its guardianship rights of the Children.

In this matter, Mr. Matera was clearly not entitled to notice, as he was never a foster parent to any of the Children, never resided with them, and has no relationship or connection

with them. He is not an approved adoptive parent for the Children. As for Intervenor, the Children were removed from her care by DCS for legal cause. At the time of the hearing, she had neither parental rights nor guardianship rights to the Children. Thus, she was not entitled to any notice of the adoption proceedings.

## C. RIGHTS OF FOSTER PARENTS

The rights of foster parents, contained at Tenn. Code Ann. §37-2-415, provide that "[t]o the extent not otherwise prohibited by state or federal statute, the department shall, through promulgation of rules in accordance with the Uniform Administrative Procedures Act . . ." implement certain rights for foster parents. Tenn. Code Ann. §37-2-415(a) (Supp. 2009). A foster parent is afforded the right to an administrative hearing if he or she believes that his or her rights have been denied under the statutory rights. In this case, Intervenor filed the administrative pleading to assert a grievance; however, due to multiple requests for continuances made by her or her counsel, the administrative grievance became moot when the adoption was granted to Foster Parents. The Administrative Law Judge dismissed the administrative action in an order entered March 5, 2009. Thus, the statute does not provide any remedy that will assist Appellants.

## V. CONCLUSION

The judgment of the trial court is affirmed. Costs on appeal are taxed to Appellants, Christopher Matera and Lauretta Martin-Matera. This case is remanded to the trial court, pursuant to applicable law, for enforcement of that court's judgment.

_____
JOHN W. McCLARTY, JUDGE