IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 2, 2014 Session

**IN RE R.S.M.**

**Appeal from the Chancery Court for Washington County**
**No. 41931     John C. Rambo, Chancellor**

**No. E2014-00027-COA-R3-JV-FILED-FEBRUARY 27, 2015**

A.E.M. (Mother) surrendered parental rights with respect to her minor daughter, R.S.M. (the Child), to prospective adoptive parents, P.B.G. and D.R.G. (collectively, Respondents). M.S.M. and M.W.M. (Grandparents), the Child's maternal grandparents, filed a complaint seeking to intervene in the surrender by A.E.M. of her parental rights. At trial, the court found (1) that the burden of proof was on Grandparents to establish, by clear and convincing evidence, that it was in the Child's best interest to remove her from Respondents, and (2) that they failed to meet their burden. The court dismissed Grandparents' complaint. They appeal. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., C.J., delivered the opinion of the Court, in which D. MICHAEL SWINEY and THOMAS R. FRIERSON, II, JJ., joined.

Keith A. Hopson, Kingsport, Tennessee, for the appellants, M.S.M. and M.W.M.

L. Carter Massengill, Bristol, Tennessee, for the appellees, P.B.G. and D.R.G.

No appearance by or on behalf of A.E.M.

No appearance by Heather N. Smith, guardian ad litem for minor child, R.S.M.

# OPINION

## I.

The Child was born to Mother in October 2010.[1] Following her birth, the Child and Mother lived with Grandparents in their Jonesborough home. Grandparents loved the Child and they shared a close relationship. On December 26, 2012, Mother told Grandparents that she was going shopping. When she left, she took the Child with her. It was the last time Grandparents saw the Child.

A month earlier, Mother began a relationship with one Tommy Bennett. Grandparents did not approve of the relationship. After Mother left with the Child, she contacted Grandparents and told them (1) that she needed a break, (2) that the Child was not in danger, and (3) that Mr. Bennett was there to protect her and the baby. Mother later sent a text to Grandparents saying that she was not taking the Child from them and that she planned to be gone for only one week. Nearly a month passed, and Grandparents were unable to locate Mother and the Child. They were worried about the Child's safety. On January 24, 2013, Mr. Bennett's mother informed Grandparents that, according to her son, the Child was no longer with the couple and that Mother may have given her up for adoption. Days later, Grandparents filed an emergency petition in the Washington County Juvenile Court[2] seeking an ex parte order and custody. At an initial hearing in that proceeding, they learned, for the first time, that Mother had executed on January 29, 2013, a consent to adoption under North Carolina law.

On February 11, 2013, Grandparents filed a complaint in the trial court pursuant to Tenn. Code Ann. § 36-1-111(u)(2) (2014), which, in relevant part, permits "any person" to "present proof concerning the best interests of the child . . . " who is the subject of a surrender. Grandparents alleged that awarding custody of the Child to them was in the Child's best interest. They requested an order removing custody from Respondents. By way of response, Respondents moved to dismiss the complaint.[3]

---

[1]Apparently, the identity of the Child's father has not been established. The birth certificate is blank as to the "father."

[2]We do not have a transcript of the juvenile court proceeding before us. The record suggests that the juvenile court dismissed the pending dependency and neglect proceeding and its decision was affirmed on appeal by the circuit court.

[3]Mother did not file an answer to the complaint, but she did appear at trial as a witness for Respondents.

Trial was held on September 5, 2013. Testimony reflected that Mother's family was excited about the Child's pending birth. After the Child was born, Grandparents supported the Child and provided her with a loving home. They attended to the Child's daily needs and helped Mother raise her. The Child called grandmother "G," and said she was "G's girl." She referred to grandfather as "Pops" and often spent time with him, playing, reading, and running errands. The Child was part of her extended family's lives. Relatives had attended the birth, helped care for the Child, and bought her presents. Grandmother arranged the Child's first birthday party, which was attended by some thirty friends and relatives. Grandparents provided Mother with an allowance and allowed Mother and the Child to live with them while Mother attended community college.

Mother testified that she had contemplated adoption since she became pregnant; however, she had not shared her thoughts with Grandparents. After she and Mr. Bennett began a relationship, she discussed adoption with him. Mr. Bennett had previously given up a child of his own and he encouraged Mother to do the same. Mother acknowledged that she later told the Respondents that Mr. Bennett did not want the Child around. Mother contacted an adoption agency and was referred to Respondents, a married couple residing in North Carolina. The Respondents had earlier adopted another child from Tennessee through this agency. After a phone conversation with Respondents on January 21, 2013, and a few text messages in the next few days, Mother decided to surrender the Child to Respondents. On January 24, 2013, Mother and Mr. Bennett met Respondents in a Wal-Mart parking lot in Johnson City. After brief introductions, Respondents provided Mother with gas money and a phone card, and then left with the Child. Respondents remained in Tennessee with the Child for about two weeks until they received clearance under the Interstate Compact on the Placement of Children to leave for North Carolina with the Child.

On January 29, 2013, Mother met with an attorney in Washington County for three to four hours to review and execute adoption papers. At that time, in accordance with North Carolina law, Mother executed a "Consent to Adoption and Statement of Understanding" in which she named Respondents as the prospective adoptive parents.[4] At trial, Mother testified she believed that, despite the adoption, Grandparents could receive pictures of the Child from Respondents and visit the Child later in life.

At the time of trial, grandfather was fifty-four and grandmother fifty-two, and they had been married for thirty-three years. Aside from a few physical ailments, including nerve

_____

[4]No documents evidencing the surrender/consent to adoption are before us. In answer to the complaint, Respondents admitted the allegation that the consent was not executed before a court or filed in court. On appeal, Grandparents do not raise an issue as to the validity of Mother's surrender of the Child for adoption by Respondents.

damage to grandfather's feet, Grandparents were in good general health. They testified their health did not preclude them from caring for the Child. Grandparents both graduated from high school. They have steady work histories. Both are long-time employees of Eastman Chemical Company. They are financially stable.

Respondents testified they had been married for five years. They are both twenty-seven years old, and their adopted son, J.G., is twenty-eight months old. Respondents testified they are both in good health and have no criminal records. Respondent mother stays at home with the children, while respondent father works as a mechanic earning some $65,000 a year. Respondents testified they belong to the Mennonite faith, attend church three times a week, and their lives are centered around God and family. The family eats together every evening and spends time together on evenings and weekends. Respondent mother has a large, extended family nearby, including her parents. They interact often. She testified that Mennonites do not shun family members or others in the community who do not follow their faith. She added that if the Child decided as an adult not to continue to follow in their faith, they would still continue to love and welcome her. As to her education, the Child would attend a Mennonite school through age 16. According to respondent mother, the Child could obtain a G.E.D. to further her education, and could attend college, although it was not encouraged for Mennonites to do so. Instead, they were encouraged to learn a trade.

Respondents introduced proof of their well-kept, modern home. They testified that, at the time of trial, the Child and J.G., who were close in age, had established a brother-sister relationship; they enjoyed playing together. According to Respondents, the Child had a "sad face," and grieved for a month or two after Mother left her, but she has since adjusted well to her new home. In the first days, she had asked for "Mommy," but had never asked for Grandparents. Respondents had passed two home studies by the adoption agency, one for their son and one in contemplation of the Child's adoption. They had retained counsel and were ready to proceed with the adoption if permitted to do so.

Mother testified that, some eight months since she surrendered the Child, she continued to believe she acted in the Child's best interest in selecting Respondents to adopt the Child rather than Grandparents. She believed Respondents offered the best home for the Child. She supported the planned adoption.

On December 3, 2013, the trial court entered its final order dismissing Grandparents' complaint, and declining to remove the Child from Respondents' custody. The court set out its extensive factual findings and legal analysis and conclusions in a well-reasoned twenty-page order. In summary, the court found:

> As a result of the decisions made by [Mother], [Grandparents],

by clear and convincing evidence, must prove [the Child's] removal from the custody of [Respondents] represents the best interests of [the Child]. Such evidence must produce in the fact-finder's mind a firm belief or conviction that removing [the Child] from [Respondents] should be undertaken by the Court.

* * *

Although the Court may desire to give [Grandparents] relief from their abrupt separation from their granddaughter, their daughter's surrender to initiate adoption proceedings controls this proceeding. The Court is unable to find by clear and convincing evidence that disrupting the adoption of [the Child] from a loving and caring home is in her best interests.

Grandparents filed a timely notice of appeal.

## II.

Grandparents present two issues for our review:

1. Whether the trial court committed reversible error by finding that the Appellants, M.S.M. and M.W.M., had the burden of proving that the surrender and proposed adoption of the minor Child was not in the minor Child's best interest.

2. Whether the trial court committed reversible error by finding that remaining with the prospective adoptive parents was in the minor Child's best interest and by not finding that it was in the minor Child's best interest to enter an order removing the minor child from the prospective adoptive parents and awarding legal custody to Appellants, M.S.M. and M.W.M.

## III.

A trial court's findings of fact are subject to a de novo review by this Court with a presumption of correctness, unless the preponderance of the evidence is against those findings. *See* Tenn. R. App. P. 13(d); ***Alexander v. Inman***, 974 S.W.2d 689, 692 (Tenn. 1998). As for the trial court's conclusions of law, this Court is obligated to conduct a de novo review with no presumption of correctness attaching to the trial court's legal conclusions. *See*

*Ganzevoort v. Russell*, 949 S.W.2d 293, 296 (Tenn. 1997).

IV.

A.

Taken together, the issues raised by Grandparents essentially challenge the trial court's analysis and dismissal of their complaint. We address these issues in turn. To begin, we consider our adoption laws regarding the surrender of a child and the right of interested persons to intervene in such proceedings. In the case of *In re M.J.S.*, 44 S.W.3d 41, 49-51 (Tenn. Ct. App. 2000), this Court provided an overview of the law, in relevant part, as follows:

> In the context of adoptions involving a surrender or parental consent, Tennessee's adoption statutes permit biological parents to surrender their parental rights to a child in favor of a particular person or agency. The statutes define "surrender" as "a document executed under the provisions of § 36-1-111 or under the laws of another state or territory or country, by the parent or guardian of a child, by which that parent or guardian relinquishes all parental or guardianship rights of that parent or guardian to a child, to another person or public child welfare agency or licensed child-placing agency for the purposes of making that child available for adoption." Tenn. Code Ann. § 36-1-102(45) (Supp. 1998). The statutes provide that "[a] surrender or parental consent may be made or given to any prospective adoptive parent who has attained eighteen (18) years of age, the department, or a licensed child-placing agency in accordance with the provisions of this section." Tenn. Code Ann. § 36-1-111(c) (Supp. 1998) (emphasis added). Thus, the statutes allow a biological parent to surrender a child directly to a prospective adoptive parent chosen by the biological parent. *See id.*; see also Tenn. Code Ann. § 36-1-111(l), (m), (q)(1) (Supp. 1998).
>
> Although a biological parent has the right to make the initial choice of his or her child's adoptive parent, the biological parent's right to choose the child's adoptive parent is not absolute. In filing an adoption petition, the prospective adoptive parent must allege, inter alia, that the petitioner is a fit person

"to have the care and custody of the child and that it is in the best interest of the child for this adoption to occur." Tenn. Code Ann. § 36-1-116(b)(9) (Supp. 1998). In its final order of adoption, the trial court must find "that the adoption is for the best interest of the child." Tenn. Code Ann. § 36-1-120(a)(13) (1996). Thus, the biological parent's choice of an adoptive parent is always subject to the trial court's determination that the proposed adoption is in the child's best interests.

The adoption statutes contemplate different types of intervention by interested parties.

\* \* \*

[I]n cases involving a child who is the subject of a surrender, parental consent, or guardianship order, Tennessee's adoption statutes authorize "any person" who is interested in the child's welfare to intervene in a surrender or adoption proceeding for the purpose of presenting evidence regarding the best interests of the child. See Tenn. Code Ann. § 36-1-111(u)(2) (Supp. 1998). Specifically, the statutes authorize the Department of Children's Services (DCS), a licensed child-placing agency, a licensed clinical social worker, or "any person" to intervene in the proceeding by filing a sworn complaint that "seeks to present proof concerning the best interests of the child." *Id*.[. . . . ].

After conducting a final hearing on the complaint, if the trial court finds by clear and convincing evidence that such action is in the best interests of the child, the trial court may "enter an order removing the child from the prospective adoptive parents or other custodian or guardian of the child." Tenn. Code Ann. § 36-1-111(v)(4) (Supp. 1998). In that event, the trial court "may award temporary legal custody giving any person, [DCS] or a licensed child-placing agency, or a child-caring agency, the care and custody of the child." *Id*.[.]

(Additional citations omitted.)

### B.

Grandparents assert that the trial court erroneously determined it was their burden to

prove "that the surrender and proposed adoption of [the Child] was not in the Child's best interest." Grandparents contend that, instead, the trial court should have conducted a straightforward "best interest" analysis to decide the proper inquiry – according to them, whether awarding custody of the Child to Grandparents is in the Child's best interest.

In support of its final order, the trial court undertook an extensive discussion of the various "potentially conflicting interests" at play. We quote pertinent portions of that order:

> Although the manner of [Mother] hiding the adoption and excluding her parents from adoption consideration are troubling, the Court finds there is no factual or legal basis to question the validity of [Mother's] selection of [Respondents] as prospective adoptive parents.
>
> The next question concerns the consequences of this surrender as it relates to [Grandparents'] petition.
>
> \* \* \*
>
> The law guides the Court as to the analysis of the facts and the law the Court must undertake in this proceeding. These requirements are found at TENN. CODE ANN. § 36-1-111(v)(4):
>
>> Upon the final hearing, and *based upon clear and convincing evidence that the action is in the best interests of the child*, the court shall have jurisdiction to enter an order removing the child from the prospective adoptive parents or other custodian or guardian of the child, and may award temporary legal custody giving any person, the department or licensed child-placing agency, or a child-caring agency, the care and custody of the child as provided under § 37-1-140 or may enter a guardianship or partial guardianship order with the rights provided under this part, all subject to the rights of any remaining parent or guardian.
>
> . . . The burden of proving by clear and convincing evidence

that the proposed adoption is not in the [C]hild's best interest is upon the intervening party – [Grandparents]. ***In re M.J.S.***, 44 S.W.3d at 55. Although this proceeding is not an adoption proceeding, it is a proceeding to disrupt an adoption process, and [G]randparents must show by clear and convincing evidence that removal of the [C]hild from [Respondents] . . . is in the [C]hild's best interest. If [Grandparents] succeed in meeting this burden, then the Court may remove the [C]hild from [Respondents], and the Court would have the option of placing custody of the [C]hild with [Grandparents].

\* \* \*

This cause of action concerns a biological parent's choice of her child's prospective adoptive parents, because [Mother] surrendered her parental rights to [Respondents].

Accordingly, this present action contemplates removing [the Child] from [Respondents] and placing her with [Grandparents]. As the parties seeking a change in legal custody, [Grandparents] must show by clear and convincing evidence that the *removal of [the Child] from [Respondents]* is in her best interest. The burden upon [Grandparents] is not to prove that the surrender was not in the best interests of the [C]hild, they must prove the removal of the [C]hild from [Respondents] is in the best interests of the [C]hild. This burden is by a clear and convincing standard.

\* \* \*

The Court of Appeals has held that the higher burden of proof placed upon [Grandparents] in this case is consistent with [the] entirety of Tennessee'[s] adoption laws "which attempts to strike a balance between several potentially conflicting interests, including the biological parent's right to choose a prospective adoptive parent, the petitioner's right to custody of the child pending the adoption proceedings, any third party's interest in the child's welfare, and the trial court's duty to protect the child's best interests." ***Id***. at 55.

(Capitalization and emphasis in original.)

With respect to their complaint, Grandparents contend that the "action" referred to in Section 36-1-111(v)(4) is the complaint itself. And so, in the words of Grandparents, the statute places the "burden on [Grandparents] to show that their complaint (action) and relief requested in said complaint (action) was in the best interests of the minor child." Grandparents thus reason that in order to prevail in their effort to gain custody, it is only necessary for them to show that awarding custody to them is in the Child's best interest.

We reject Grandparents' position. It is clear to us that the word "action" refers to the removal of the child from the prospective adoptive parents. In construing the provisions of Tenn. Code Ann. § 36-1-111(v)(4), we note that the introductory clause "based upon clear and convincing evidence that the action is in the best interests of the child" contemplates not the complaint or the cause of action alleged in that document, but rather the "order removing the child from the prospective adoptive parents." That is the possible "action" granted to the trial court by statute. Thus, as the trial court correctly concluded, the burden was on Grandparents to show, by clear and convincing evidence, that it was in the best interest of the Child to remove her from the custody of the prospective adoptive parents.

As the trial court emphasized, Grandparents, despite their close relationship with the Child, are not on equal footing with Respondents with respect to custody of the Child. As it stands, as a result of Mother's choice to surrender the Child to Respondents for adoption, Grandparents, as interested third parties, are saddled with the burden of proving that it is best for the Child to be removed from the prospective parents Mother has chosen for the Child. Stated differently, the law does not contemplate that Grandparents can easily "undo" Mother's decision by simply asserting that it is best for the Child to be placed with them.

The trial court articulated and correctly applied the appropriate burden of proof with respect to Grandparents' complaint. We reject Grandparents' argument to the contrary.

C.

We next consider the trial court's "best interest" determination. Our review is guided by consideration of the factors set forth in Tenn. Code Ann. 36-1-106(a)[5], which

_____

[5]Pursuant to Section 36-6-106(a), "[t]he court shall consider all relevant factors, including the following, where applicable:

(continued...)

-10-

factors apply to any "proceeding requiring the court to make a custody determination."

In the present case, the trial court expressly considered evidence of specific factors relevant to the present case. "Where conflicting evidence is presented at trial as to the best interests of the children, the trial court's findings are entitled to great weight.*" Sonet v. Unknown Father of Hasty*, 797 S.W.2d 1, 5 (Tenn. Ct. App. 1990).

The trial court undertook an extensive analysis of the Child's best interest. We quote pertinent portions of its decision:

> From birth until December 26, 2012, [the Child's] grandparents took the leading role in her child rearing. Although [Mother] was a daily presence, the true nurturing and close relationship existed between [the Child ] and [Grandparents]. The bond between [Mother] and [the Child] was not as in-depth and close. [Grandparents] assumed the role of parents, to which [Mother]

---

[5](...continued)
(1) The love, affection and emotional ties existing between the parents or caregivers and the child;
(2) The disposition of the parents or caregivers to provide the child with food, clothing, medical care, education and other necessary care and the degree to which a parent or caregiver has been the primary caregiver;
(3) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment . . .;
(4) The stability of the family unit of the parents or caregivers;
(5) The mental and physical health of the parents or caregivers;
(6) The home, school and community record of the child;
(7)      (a) The reasonable preference of the child, if twelve (12) years of age or older;
          (b) The court may hear the preference of a younger child on request.
(8) Evidence of physical or emotional abuse to the child, to the other parent or to any other person . . .;
(9) The character and behavior of any other person who resides in or frequents the home of a parent or caregiver and the person's interactions with the child; and
(10) Each parent's or caregiver's past and potential for future performance of parenting responsibilities, including the willingness and ability of each of the parents and caregivers to facilitate and encourage a close and continuing parent-child relationship between the child and both of the child's parents, consistent with the best interest of the child.

This statute was amended effective July 1, 2014. We have quoted from the statute as it existed at the time of trial.

-11-

acquiesced. The Court finds [Respondents] are suitable persons to have custody of [the Child], but the placement of [the Child] with [Respondents] is the reality in this case that cannot be ignored.

[Mother] chose [Respondents] to raise [the Child]. It is harsh, but [Mother] made a second choice — she deliberately declined to select her own family, the family to which she was most familiar. [Mother] chose not to select the couple who raised her. The law in Tennessee allows a biological parent to offer the parent's child to another family. The law does not require the biological parent to include or consult with extended family regarding this choice. The law requires the Court to give deference to the biological mother's choice, unless by clear and convincing evidence the best interests of the child are fulfilled by disrupting this choice.

By the time of the September hearing, [the Child] had been in the custody of [Respondents] for seven months. [The Child] now knows [respondent mother] as her mother, and she now identifies [respondent father] as her father. The evidence was undisputed that [Respondents] are loving parents. The evidence was undisputed that [Respondents] have the financial means to provide for the needs of [the Child].

During the trial, [Grandparents] and guardian ad litem emphasized the cultural limitations on higher education [Respondents] would follow based on their religious beliefs. However, this Court must maintain strict neutrality in cases involving religious issues. The Court cannot prefer one family's religion over the other's unless one's beliefs and practices threaten the health and well-being of the child. Certainly, the health of [the Child] is not affected by the education plans of [Respondents]. Speculation is required to find that her overall well-being would be harmed. A college education is not universally obtained, and [Respondents] were clear that they would not preclude that option, and the Court notes that [the Child] is free to make her own education choices concerning college and career when she obtains the age of majority. Claimed harm to [the Child] based on the assumption that college and a career are not available to her must be

demonstrated and cannot be assumed. The Mennonite beliefs regarding education do not preclude the placement of legal custody of [the Child] with [Respondents] absent evidence of its effects on [the Child].

There are other factors indicating that [Respondents] are suitable parents for [the Child]. [Respondents] have a loving and stable marriage. There is love, affection, and emotional ties between [the Child] and [Respondents], to include the extended [Respondents'] family living in near proximity to them. [Respondents] both demonstrated excellent child-rearing skills, as they regularly interact with [the Child] and promote reading and family and individual responsibilities. This includes age-appropriate chores around the home. This stable family life includes [Respondents' son], who [the Child] now treats as her brother.

Although [Respondents] do not spoil their children, they do provide social events for [Respondents' son] and [the Child]. [Respondents] are rearing [the Child] in a nurturing religious life, which [the Child] enjoys. There was no evidence presented concerning any religious upbringing [Grandparents] would offer, except the uncontradicted testimony of [Mother] that [Grandparents] stopped attending church several years prior. [Mother] strongly desired for [the Child] to be raised by a dedicated Christian family, which desire [Respondents] are fulfilling.

Upon careful review of the pleadings, the testimony and other evidence submitted, it is the Court's conclusion that the legal custody of the minor child shall remain with her prospective adoptive parents, [Respondents]. The testimony illustrates that [Respondents] are able and fit to exercise proper care and custody of [the Child], and the burden was upon [Grandparents] to persuade the Court by clear and convincing evidence that the removal of [the Child] from [Respondents] and the awarding of legal custody of [the Child] with them serves the best interests of [the Child].

When both households offer a home that would allow [the Child] to thrive, but [Mother] selects one household over the

-13-

household with which she was most familiar, then the law precludes this Court from disrupting this choice and adoption process unless it was convinced by clear and convincing evidence that a change in custody is in the best interests of the minor child. Any fear that [the Child] would not flourish in the custody of [Respondents] was not substantiated. Any fear that [the Child] lacks a parental-child bonding, lacks a financially secure and loving environment in the custody of [Respondents] was not substantiated. [The Child] enjoys a stable, loving, caring, and happy household, to which this Court has no doubt.

As always, the best interests of the child is the controlling factor. [The Child] has thrived with her prospective adoptive parents. She is happy and vibrant. [Grandparents'] cause of action fails, because the clear and convincing evidence standard means [Grandparents] must convince the Court that the evidence eliminated any serious or substantial doubt that removing [the Child] from [Respondents] is in her best interests. Such evidence should produce in the fact-finder's mind a firm belief or conviction that removing [the Child] from [Respondents] should be undertaken by the Court. For the reasons stated, the [Grandparents] have failed in this burden of proof.

The Court is sympathetic to [Grandparents] and their family. [Mother's] choice has been tragic for them and has dramatically affected them. However, the adoption statutes give primacy to the best interests of the child in adoption proceedings, and specifically declares that "[i]n all cases, when the best interests of the child and those of the adults are in conflict, such conflict shall always be resolved to favor the rights and the best interests of the child, which interests are hereby recognized as constitutionally protected and, to that end, this part shall be liberally construed." Tenn. Code Ann. § 36-1-101(d). Although the Court may desire to give [Grandparents] relief from their abrupt separation from their granddaughter, [Mother's] surrender to initiate adoption proceedings controls this proceeding. The Court is unable to find by clear and convincing evidence that disrupting the adoption of [the Child] from a loving and caring home is in her best interests.

The trial court carefully analyzed the relevant evidence pertaining to whether it was in the best interest of the Child to remove her from the prospective adoptive parents. In reviewing that evidence, we cannot conclude that there is clear and convincing evidence that the Child's best interest will be served by taking her away from Respondents.

V.

The judgment of the trial court is affirmed. Costs on appeal are taxed to the appellants, M.S.M. and M.W.M. This case is remanded to the trial court, pursuant to applicable law, for enforcement of the court's judgment and the collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., CHIEF JUDGE